JOSEPH GUNTHER *vs.* THE MAYOR AND CITY COUNCIL
OF BALTIMORE.

*Taxation of Property in Ships—Constitution of the United
States—Limitations—1861, ch. 94, and Art. 81, sec. 92, of
the Code—1874, ch. 483, sec. 82.*

The interest of a citizen of Maryland, and resident of Baltimore, as
part owner of vessels employed in foreign commerce, registered as
vessels of the United States in the office of the Collector of Cus-
toms at Baltimore, the home port of the vessels, and the domicil
and usual place of residence of their acting and managing owners,
is liable for annual taxes levied on it for municipal purposes by
the authorities of that city; and such taxation does not contravene
the Constitution of the United States.

An action of *assumpsit* by the Mayor and City Council of Baltimore
against a delinquent tax-payer, to recover unpaid taxes, is with-
drawn from the operation of Art. 57, sec. 1, of the Code, relating to
Limitations, by the Act of 1861, ch. 94, which extended the period
for the collection of taxes levied in that city, from three to four
years. Sec. 92 of Art. 81 of the Code, which required the collec-
tion of taxes within three years, (extended to four years by the
Act of 1874, ch. 483, sec 82,) did not apply to the City of Balti-
more.

APPEAL from the Baltimore City Court.

The case is stated in the opinion of the Court.

The cause was argued before BARTOL, C. J., BOWIE,
GRASON, MILLER, ROBINSON and IRVING, J.

*William E. Gleeson* for the appellant.

*James L. McLane, City Counsellor,* for the appellee.

MILLER, J., delivered the opinion of the Court.

This suit was brought by the appellee against the appellant to recover certain taxes for the years 1873, 1874, 1875 and 1876. The case was submitted to the Court below upon an agreed statement of facts, from which it appears the taxes in question were levied in pursuance of the general revenue laws of the State, upon the defendant's interest in certain vessels. It is agreed that, during these years, the defendant was a citizen of Maryland and resided in the City of Baltimore; that he was part owner of three vessels which were regularly registered as vessels of the United States, under the Act of Congress of December 31st, 1792, in the office of the Collector of Customs at Baltimore, the home port of the vessels, and the domicil and usual place of residence of their acting and managing owners; that under the powers conferred by its charter, the City of Baltimore, by sundry ordinances passed in these years, imposed an annual tax for general municipal purposes upon all assessable property in the city, and in virtue thereof, and upon the basis of assessments previously made and then in force, the several shares, interests and proportions belonging to the defendant and other part owners residing in Baltimore, in each of these vessels, were taxed by the City as assessable, and assessed *property* in the said city belonging to such resident part owners respectively. There is nothing in the record to show that this assessment was made, or the tax levied with reference to the *tonnage* of the vessels, but on the contrary they appear to have been valued and assessed in the same manner as other personal property or chattels would have been valued and assessed under the same laws. The general assessment laws then in force subjected to assessment and taxation, among other property, "the interest or proportion in all ships or other vessels, if registered in a port of Maryland, whether in or out of port, owned by residents of this

State." *Code, Art.* 81, *sec.* 2; *Act of* 1874, *ch.* 483, *sec.* 2. It was further agreed that these vessels, during that time, were employed continuously and exclusively in foreign commerce, and seldom remained in the port of Baltimore more than ten weeks in any one year; that they have paid to the United States the usual tonnage duties prescribed by sec. 4219 of the Revised Statutes, and have also been compelled to pay to American consular officers in foreign ports, the fees allowed by the rates prescribed by the President, as required by law, and published in the regulations and circulars of the State Department.

Now it is contended that the tax so levied cannot be sustained because it is in contravention of the provisions of the Constitution of the United States, which confer upon Congress the power to regulate commerce with foreign nations and among the several States, and forbid the States, without the consent of Congress, to lay any duty of tonnage, or any imports, or duties on imports or exports, except what may be absolutely necessary for executing their inspection laws. The general question thus presented is not a new one, but has arisen, and been considered and adjudicated by the Federal and State Courts in many cases. In *Howell vs. The State*, 3 *Gill*, 14, our predecessors, in a very able opinion, declared that property in ships or vessels belonging to a citizen of this State, living within her territory, subject to her jurisdiction and protected by her laws, is part of his capital in trade, and like other property is the subject of State taxation. In that case a State law precisely like that now in force, subjecting to taxation the interest or proportion in all ships or other vessels, whether in or out of port, owned by persons resident of the State, was sustained and held not to be in violation of, or in conflict with any provision of the Federal Constitution. That decision has more than once been approved by the Supreme Court of the United States. Very recently in *Transportation Co. vs. Wheeling*, 9 *Otto,*

275, where the question again arose, the Court reviewed all the authorities, and, without dissent, affirmed the law as stated in *Howell vs. The State.* The doctrine announced by the Supreme Court in that case is, that while taxes levied by a State on ships or vessels as *instruments* of commerce and navigation are prohibited, yet annual taxes for the support of the State Government levied upon ships or vessels owned by citizens of the State, as *property*, are perfectly valid. "It is too well settled" say the Court, "to admit of question, that taxes levied by a State upon ships or vessels owned by the citizens of the State as property based upon a valuation of the same as property, to the extent of such ownership, are not within the prohibition of the Constitution." Such a tax is a tax to the *owner* in the locality of his residence, and is not a tax upon the ship as an instrument of commerce. The prohibition against tonnage duties, when properly construed, does not extend to the investments of the citizens in such structures.

It is true that in these cases, as in all to which we have been referred, the vessels were engaged in the coasting trade, or inter-State, and not in foreign commerce. But how can this affect the principle of the decisions? A ship is as much property in the one case as in the other. The power of State taxation is not limited by the fact that the resident owner may choose to employ his vessel in foreign commerce, rather than in the coasting trade, nor can we discover anything in the constitutional prohibitions that will allow a State to tax it as property in one case, and forbid such taxation in the other. An owner living in Baltimore may employ his vessel in trading to Liverpool or to New Orleans, but in either case, it is his personal property, and like other such property its *situs* for the purpose of taxation, as well as in other respects, is the domicil of the owner. *Hooper vs. Mayor & C. C. of Balto.,* 12 *Md.,* 464; *Hays vs. Pacific Mail Steamship Company,* 17 *How.,* 596.

To the right of the City to recover the taxes for the year 1873 the plea of limitations is interposed. The tax levy for that year was made by ordinance, approved April 12th, 1873, and this suit was instituted on the 9th of March, 1877, less than *four* years thereafter. By the Act of 1852, ch. 75, sec. 4, it was provided " that all taxes hereafter to be levied for county or city purposes shall be collected *by the collectors* of the counties and cities respectively within *three* years after the same shall have been levied, and in case the same shall not be collected within three years, then the party or parties from whom such taxes may be demanded may plead this section in bar of any recovery of the same." By the Act of 1860, ch. 91, sec. 1, it was provided that "all taxes now levied or which may hereafter be levied in the City of Baltimore, shall be collected within *three* years from the levying of the same, and the collection of taxes *shall not be enforced by law* after the lapse of said three years, and the party from whom said taxes may be demanded, may plead this section in bar of any recovery of the same." When the Code was adopted both these provisions were codified, the the former becoming sec. 92 of Art. 81, of the Code of Public General Laws, and the latter sec. 880, of Art. 4 of the Code of Public Local Laws. It thus appears that the Legislature made a separate provision for the collection of taxes levied in the City of Baltimore, and the plain inference is that sec. 92, of Art. 81 of the Code of Public General Laws was not intended to apply to that City. Afterwards, by the Act of 1861, ch. 94, sec. 880, of Art. 4 of the Code of Public Local Laws, was amended so as to *extend* the period within which taxes levied in the City of Baltimore could be collected, to *four* years. This suit therefore, was *within time* under this statute, as respects the taxes for the year 1873. A similar *extension* of time as to the collection of "taxes levied for county and city purposes," as provided by sec. 92, of Art. 81, of the Code

of Public General Laws, was afterwards made by the Act of 1874, ch. 483, sec. 82. In neither of these Acts is any reference made to the law relating to the limitation of actions generally, (*Code, Art.* 57, *sec.* 1,) but it is plain that an action of *assumpsit,* like the present, by the City of Baltimore against a delinquent tax-payer, to recover unpaid taxes, is withdrawn from its operation, by the Act of 1861, ch. 94, even if it should be held that but for this Act, such an action would fall within the provisions of the general limitation law.

*Judgment affirmed.*

(Decided 3rd February, 1881.)

