The County Commissioners of Allegany County, and John J. Keller *vs* The Union Mining Company of Allegany County.

*Levy and collection of Taxes—Powers of County Commissioners—Equity jurisdiction—Irregularities—Injunction—Estoppel—Construction of the Acts of 1876, ch. 260, and 1878. ch. 178, relating to the Assessment of Real estate—Coal lands—Corporation—Notice—Tender.*

The County Commissioners have the exclusive power to levy and collect taxes, and in some cases to value and assess property in the manner pointed out by law.

While they constitute a tribunal with special and limited statutory powers, yet acting within the scope of such powers their action is conclusive and cannot be reviewed by a Court of equity.

The collection of taxes will not be interfered with or restrained by a Court of equity for mere *irregularities* in their proceedings, or for any hardship that may result from their collection.

It is only when the tax itself is clearly illegal or the tribunal imposing it has clearly exceeded its powers, or the rights of the tax-payers have been violated, that the interposition of the special remedy by injunction can be successfully invoked, and only then when no appellate tribunal has been created with power to remedy the wrong.

With the value put upon lands by the Commissioners no Court can interfere, as that is a matter confided to their discretion.

An objection that the whole tax bill due by any person is placed in the hands of one collector, instead of several, is at most a mere irregularity and cannot be inquired into by another Court.

Nor is it a valid objection that land was assessed, and then the value of the coal underlying it, or that the land was assessed and then the improvements upon it; the latter being the very method pointed out in the general assessment law, and the former being based upon the same principle.

County Comm'rs of Allegany Co., *et al. vs.* Union Mining Co., &c.

The Act of 1878, ch. 178, provides, that the president or other proper officer of any corporation that might own real property, should furnish to the County Commissioners a "true statement of such real property situate or located in such county; and such real property shall be valued and assessed by said County Commissioners to the incorporated institution so owning the same." In a case where the real estate of a corporation consisting of several separate and distinct tracts of land, each having a well known name, and lying in different parts of the county, and having different values, was assessed as 4245 acres at $10 per acre, it was HELD:

That if the president of the corporation, in the statement furnished to the County Commissioners, merely described the lands as 4245 acres, then the corporation was estopped from saying that the assessment was improper and void. But if the president furnished in detail a proper statement, showing the names, number of acres, and location of the several tracts, then it was manifest error in the Commissioners to change it and make the assessment that they did.

The Act of 1878, ch. 178, is *in pari materia* with the general assessment law of 1876, ch. 260, and the County Commissioners in assessing the real estate of corporations under the Act of 1878, should conform to the requirements of sec. 17, of the said Act of 1876, which provides that "In valuing real estate in any county in this State, except in a city in such county, the assessors shall specify, as far as may be practicable, the *name or names of the tracts or parcels of land so valued, and the number of acres or quantity of land in each, and the value per acre.*"

The power of annually correcting assessments, conferred by sec. 150, of thes aid Act of 1878, gives the Commissioners the power to alter the assessment, *as made by the assessors,* if in their judgment the property had largely increased or diminished in value. It does not authorize them to change the *mode and manner* in which the property was required by law to be assessed.

But the Commissioners have no power to increase the assessment without notice to the party to be affected by the change. And where such increase is made without proper notice, the levy and collection of the tax on the increase is illegal and void.

The assessment upon the real estate of a corporation was increased by the County Commissioners without notice to the owner, who filed a bill for an injunction to restrain the collection of the tax.

County Comm'rs of Allegany Co., *et al. vs.* Union Mining Co., &c.

On appeal from an order of the Court below granting a preliminary injunction as prayed, it was HELD:

1st. That although the action of the Commissioners was illegal and void, the complainant was not entitled to the injunction to the extent that it was granted.

2nd. That the taxes on the original amount of the assessment were due and ought to have been paid, or tendered unconditionally, and the fact have been so averred in the bill; a professed willingness to pay an uncertain sum was insufficient.

3rd. That the injunction should be dissolved as to the taxes due on the original amount of the assessment, but allowed to stand as to the balance of the taxes claimed to be due.

APPEAL from the Circuit Court for Allegany County, in Equity.

The case is stated in the opinion of the Court.

The cause was argued before ALVEY, C. J., STONE, ROBINSON, IRVING, RITCHIE, and BRYAN, J., for the appellee, and submitted on brief for the appellants.

*B. A. Richmond,* and *William Brace,* for the appellants.

*Ferdinand Williams,* for the appellee.

STONE, J., delivered the opinion of the Court.

The bill in this case is for an injunction to restrain the County Commissioners of Allegany County and the tax collector from selling the property of the appellee, who insists that a portion of the tax levied upon its property is illegal and void. A preliminary injunction was granted by the Court below, and from this order an appeal has been taken.

The appellee assigns several reasons why the assessment is illegal and void.

1st. Because the property of the appellee so taxed, consists of several tracts of non-adjoining land lying in different parts of the county, and known by distinctive names, but the appellee was taxed for a number of acres in gross, without giving the name or number of acres in any one tract.

2nd. Because the assessment was made without notice to the appellee.

3rd. Because as to part of the land of the appellee, the land was assessed, and then the coal underlying the land was assessed.

4th. Because another company had an interest in the coal land of the appellee, and the appellee should not therefore be assessed for its full value.

5th. That the Commissioners changed the assessed value of the lands—when in fact they had not increased in value.

6th. And that the assessment was too high.

7th. That the land was assessed, and then the houses and improvements upon it.

The County Commissioners have the exclusive power to levy and collect taxes, and in some cases to value and assess property in the manner pointed out by law. While they constitute a tribunal with special and limited statutory powers, yet acting within the scope of such powers their action is conclusive, and cannot be reviewed by a Court of equity. The collection of taxes will not be interfered with or restrained by a Court of equity for mere *irregularities* in their proceedings, or for any hardship that may result from their collection. It is only when the tax itself is clearly illegal, or the tribunal imposing it has clearly exceeded its powers, or the rights of the tax-payers have been violated, that the interposition of the special remedy by injunction can be successfully invoked, and only then when no appellate tribunal has been created with power to remedy the wrong. The bill in this case is a long one, and rather argumentative than

specific in some of its statements. With the value put upon the lands by the Commissioners no Court can interfere, as that is a matter confided to their discretion. The objection that the whole tax bill due by the appellee was placed in the hands of one collector, instead of several, is at most, a mere irregularity and cannot be inquired into by another Court. As to the claim of the appellee, that the contingent royalty reserved to the Consolidation Coal Company, upon the coal that might be mined from its coal beds, should be taxed to the Consolidation Coal Company and the value of such royalty deducted from the property of the appellee, it is entirely unnecessary for us to express any opinion whatever, as there is nothing in these proceedings to show, that the Consolidation Company has ever derived any benefit from it, or that the contingency ever will happen that will give them the right to use the coal. Nor is there any force in the objections that the land was assessed and then the value of the coal underlying it, or that the land was assessed and then the improvements upon it. The latter is the very method pointed out in the general assessment law, and the former is based upon the same principle.

But there are some objections urged by the appellee that require a more extended notice. One of these is the fact alleged in the bill that the lands of the appellee consisted of half a dozen or more separate and distinct tracts of land, each having a well known name, and lying in different parts of the county, and having different values, while the only assessment made is upon 4245 acres of land which is valued at $10 per acre, making the whole valuation $42,450. This raises the question whether the law imposes upon the Commissioners the duty of assessing each tract separately, and whether a failure so to do is such an infringement of the rights of the appellee, as he is entitled to have redressed by a Court of equity.

The lands of the appellee were required to be valued and assessed under the general assessment law of 1876,

and we must presume that they were assessed and re-
turned to the Commissioners according to law. No taxes
however were then paid upon these lands, but the stock
of the corporotion representing all its property, and in-
cluding these lands, was taxed. The Act of 1878, chap.
178, altered the law in that respect, and made the lands
of this and other corporations, liable to direct taxation.
That Act provided that the president or other proper officer
of any corporation, that might own real property, should
furnish to the County Commissioners "a true statement of
such real property situate or located in such county; and
such real property shall be valued and assessed by said
County Commissioners to the incorporated institution so
owning the same."

This appears to have been done, and the County Com-
missioners of Allegany proceeded to value and assess the
real estate of the appellee.

It will be seen from this Act, that the president or other
proper officer is required to furnish a *true statement* of
the real property, and the Commissioners are then to value
and assess it. If the appellee furnished the statement
of its lands, that is now found on the books of the Com-
missioners, and which has been before referred to, then
the *appellee* cannot complain of the assessment in gross.
If the president of the appellee corporation merely de-
scribed the lands as 4245 acres of land, in the statement,
he furnished the commissioners, then the appellee is
estopped from saying that the assessment is improper
and void, because such assessment is the consequence of
its own act. But if the president did furnish in detail a
proper statement, showing the names, number of acres,
and location of the several tracts, then it was manifest
error in the Commissioners to change it, and make the
assessment that they did.

It is true that the Act of 1878, ch. 178, does not pre-
scribe any particular mode of assessment, but being *in*

*pari materia* with the Act of 1876, ch. 260, the general assessment law, they should be taken together, and we may conclude that the Legislature intended that the rules they had laid down for the assessment of *all* the real property should be observed, when the County Commissioners were called on to re-assess a part of it.

The Act of 1876, ch. 260, sec. 17, the general assessment law, points out, with great particularity, the mode and manner of assessing real estate. It says: "In valuing real estate in any county in this State, except in a city in such county, the assessors shall specify as far as may be practicable, the *name or names of the tracts or parcels of land so valued and the number of acres or quantity of land in each, and the value per acre.*"

There are many obvious reasons why this particularity is required. The owner of several tracts of land, lying in different localities, and of different values, is entitled to the judgment of the assessors in the first instance, and of the County Commissioners, if they alter the first assessment, of the value of each tract separately. It is a valuable and important right to the owner, as it enables him to compare the taxation of his own with adjoining property, and see that no injustice is done him by over-estimates. The community is also entitled to this knowledge, which is often an important factor in the sale and transfer of real estate. The law recognizes this right very distinctly in sec. 22 of Art. 11 of the Revised Code, that expressly requires the clerk of the County Commissioners to keep an *accurate* account of all property, and the valuation thereof, which shall be open to inspection by the public, *without fee or reward.*

If we examine the Act as to real property *in a city,* we find still greater particularity required. The number of front feet, the depth of the lot, the street upon which it lies, and if a house is upon the lot, even the number of the house is required.

If in the face of all this particularity the County Commissioners undertake to *average* the value of half a dozen different tracts of land, lying in widely different localities, they violate the *mode and manner* of the assessment required by law.

It is no answer for the Commissioners to say, that the amount of tax that the owner has to pay is not increased by the mode of average that they have adopted, and that he would have to pay the same tax if each tract had been re-valued separately. · It is the absolute right of the owner to have them taxed separately, and this lumping reassessment is a direct violation of that right.

Judge Cooley. says : "When the two parcels are owned by the same person, if the statute requires a separate assessment, obedience to the requirement is essential to the validity of the proceedings. It cannot be held in any case that it is unimportant to the tax-payer whether this requirement is complied with or not. Indeed, it is made solely for *his benefit;* it being wholly immaterial, so far as the interest of the State is concerned, whether separate estates are or are not separately assessed. And where a requirement has for its sole object the benefit of the tax-payer, the necessity for a compliance with it cannot be made to depend· upon the circumstances of a particular case, and the opinion of a Court or jury regarding the importance of obedience to it in that instance. That method of construing statutes would abolish all certainty." *Cooley on Taxation,* 280.

As we have said before, we think the power to assess given by the Act of 1878 to the Commissioners, means an assessment such as was prescribed by the Act of 1876, and it was clearly an error in the Commissioners to assess it in a different manner.

We are strengthened in this view by the fact that the Act of 1878, ch. 178, sec. 150, gives the County Commissioners the power annually to correct any assessment. That section enacts :

"And if the real estate or other property shall, from any cause, have increased or diminished largely and materially in value since the last levy, they shall correct, alter, and amend the assessment of the same, so as to conform to its present value."

The true construction of this section is that it gives the Commissioners the power to alter the assessment *as made by the assessors,* if in their judgment it had largely increased or diminished. It does not authorize them to change the *mode and manner* in which the property was required by law to be assessed.

But as the bill leaves it in doubt whether the real estate of the appellee was assessed in gross, by the act of the appellee in furnishing the statement, we cannot make a decisive order on that point.

Another and more important objection is urged in the bill, and that is, that the change in the assessment was made in such a manner that the appellee had no opportunity to give testimony, or to be heard in the matter of the change. While the bill does not explicitly declare that the appellee had no notice of the proposed change, it does expressly charge that the appellee had no *opportunity to be heard,* or give testimony. As the only object of notice is to give the party the opportunity to be heard, and that a notice which did not give that opportunity, is in effect no notice, we must conclude that no sufficient notice was given.

It is unfortunate in this case that an answer was not filed and proof taken, so that the actual facts might have been shown, instead of resting the case on a demurrer to a very long and loosely drawn bill, which may cause a decision different from what it might have been, had all the *facts* been clearly proven.

The power given by the Act of 1878 to the County Commissioners to increase the assessment of any and all the property of a county, if *in their judgment* it has

largely increased in value, clothes the County Commissioners with most extensive power over the whole assessable property of the county. In its very nature it is greatly liable to abuse, and hence it should be construed with all proper guards to prevent surprise and injustice to the tax-payer, and more especially since the law has appointed no appellate tribunal to review or revise the action of the Commissioners.

In the recent case in the Circuit Court of Washington County, of *The Washington County Railroad Co. vs. The County Commissioners of Washington County,* in delivering his opinion, Chief Judge ALVEY said:

"And the question now is, can this large and dangerous power of re-assessing and largely increasing former valuations of property, be properly exercised without notice to the parties to be affected?

"Upon reason and the plainest principles of common justice, the answer would be in the negative. To say that the property of the citizen may be assessed to any value, however exorbitant, for purposes of taxation, without notice to him, or an opportunity to be heard, would be anomalous in our system of laws, and at the same time, revolting to all sense of right and justice.

"In all systems of taxation known to this State, there has been some mode of notification provided to the tax-payer, before he could be regarded as concluded upon the question of the valuation of his property. In making the original assessment, the party assessed has the right and opportunity of confronting the assessors, and of being heard as to the value of the property assessed. He has moreover, an opportunity expressly provided, for appearing before the board of review and correction, for the purpose of being heard, as to the proper valuation of his property. But what avails all this, if the Commissioners may, at any time, after his back is turned, and without notice or warning, increase the valuation of his property to any extent they may think proper.

" While the power of increasing the assessment may be conferred by the statute, it must, in the very nature of things, and according to the first principles of justice, be taken and understood as dependent upon the right of the party affected, to have notice of the proceeding.

" And such has always been the principle upon which assessments have been made in this State, for purposes of general taxation. If notice of the original assessment be deemed the right of the party, there can be no sort of reason, why he should not be entitled to notice of the reassessment, made with a view of an increased valuation. The reason and the object of the notice in the one case, equally apply to the other.

" Judge COOLEY, in his work on *Taxation,* at pages 266, 267, 268, treats of this subject, and carefully reviews the authorities. He says: ' We should say that notice of the proceedings in such cases, and an opportunity for a hearing, of some description, were matters of constitutional right. It has been customary to provide for them, as a part of what is " due process of law," for these cases ; and it is not to be assumed that constitutional provisions, carefully framed for the protection of property, were intended, or could be construed to sanction legislation, under which officers might secretly assess one for any amount in their discretion, without giving him an opportunity to contest the justice of the assessment. It has often been very pointedly and emphatically declared, that it is contrary to the first principles of justice, that one should be condemned unheard; and it has also been justly observed of taxing officers, that " it would be a dangerous precedent to hold that any absolute power resides in them, to tax as they may choose, without giving any notice to the owner. It is a power liable to great abuse," and it might safely have been added, it is a power, that under such circumstances, would be certain to be abused. "The general principles of law, applicable to such tribunals oppose the

exercise of any such power." This being the case, it is not to be supposed, that the Legislature in any doubtful language, has undertaken to confer it. All reasonable presumptions in construction, should favor justice and right.' And further on, (p. 268,) the author says: 'The Courts have been particularly careful to see that revisory tax tribunals did not change assessments to the prejudice of tax-payers, who, under the circumstances, had no reason to look for or anticipate any such change. If the tax-payer himself does not appeal, he has a right to suppose that the assessment against him will be allowed to stand as made. If authority is conferred upon the board of review, to change assessments under any specified circumstances, the existence of those circumstances is a condition precedent to their action.'

"These principles I take to be in entire accord with the decisions of the Courts of this State, and indeed with the decisions of all Courts of respectable authority. They must be regarded as well established principles in all enlightened jurisprudence."

In these views we concur. It being, according to our view, conceded by the demurrer that the increase from two hundred and fifty thousand, to two hundred and seventy-three thousand, four hundred and fifty dollars, was made without proper notice, the levy and collection of the tax on this difference of twenty-three thousand, four hundred and fifty dollars is illegal and void.

From all we can gather from the bill, the change from $200,000 to $250,000 first made, although made without notice, was acquiesced in by the appellee, and the taxes paid thereon, and therefore is not now before us, but only the taxes levied on the property after the last change.

But notwithstanding this, the appellee was not entitled to the injunction to the extent that it was granted. The taxes on the $250,000 were due, and ought to have been paid, or tendered unconditionally, and the fact have been

County Comm'rs of Allegany Co., *et al. vs.* Union Mining Co., &c.

so averred in the bill. In *The State Railroad Tax Cases,* 92 *U. S.,* 617, the Supreme Court says:

"It is not sufficient to say in the bill, that they (the complainants,) are ready and willing to pay whatever may be found due. They must first pay what is conceded to be due, or what can be seen to be due on the face of the bill, or be shown by affidavits, whether conceded or not, before the preliminary injunction should be granted. The State is not to be thus tied up as to that of which there is no contest, by lumping it with that which is really contested. If the proper officer refuses to receive a part of the tax, it must be tendered, and tendered without the condition annexed, of a receipt in full for all the taxes assessed."

In this case there was no actual tender, but only a professed willingness to pay an *uncertain* sum.

We shall therefore dissolve the injunction as to the taxes due on the assessment of two hundred and fifty thousand dollars, but allow it to stand as to the balance of the taxes claimed by the county. In view of the defects in the bill, we shall require, as a condition, the taxes due, and which ought to have been paid, or tendered, together with all the costs of this suit, to be paid within twenty days from the service of the order that may be passed by the Court below in conformity with this opinion.

*Order reversed with costs,*
*and cause remanded.*