BALTIMORE STEAM PACKET CO. *v.* MAYOR AND
CITY COUNCIL OF BALTIMORE.

BALTIMORE STEAM PACKET CO. *v.* STATE TAX
COMMISSION.

[Nos. 14, 15, April Term, 1931.]

*Decided June 10th, 1931.*

The cause was argued before Bond, C. J., Pattison, Urner, Adkins, Offutt, Digges, Parke, and Sloan, JJ.

*Watson E. Sherwood,* for the appellant.

*Joseph R. Walter, Assistant City Solicitor,* with whom were *A. Walter Kraus, City Solicitor,* and *W. Wallace Rhynhart, Assistant City Solicitor,* on the brief, for the appellee in No. 14.

*William L. Marbury, Jr., Assistant Attorney General,* with whom was *Wm. Preston Lane, Attorney General,* on the brief, for the appellee in No. 15.

Digges, J., delvered the opinion of the Court.

Cases No. 14 and No. 15 of the April term, 1931, although the parties defendant are different, were argued together in this court, and will be disposed of in one opinion.

No. 14 was an original equity proceeding in the Circuit Court No. 2 of Baltimore City, the complainant being the

appellant and the defendant being the Mayor and City Council of Baltimore City, and is an appeal from the order of that court sustaining a demurrer to the bill of complaint and dismissing the bill; while the appeal in No. 15 is from an order of the same court, passed in an appeal from the State Tax Commission, wherein the action of the State Tax Commission was affirmed. In this latter case the defendant (appellee) is the State Tax Commission. The subject-matter in both cases, and the question to be determined, is the legality of the assessment of the appellant's capital stock made by the State Tax Commission; No. 14 having reference to the assessment for the year 1929, and No. 15 for the year 1930.

The allegations of the bill in No. 14, and of the petition in No. 15, are practically identical, and set out in substance that the appellant is a corporation chartered by an act of the Legislature of this State in 1829, and has since been continuously engaged as a common carrier by water in the transportation for hire of passengers and freight between the states of Maryland and Virginia; that it is engaged wholly in interstate commerce; that it owns and operates three vessels of over 500 deadweight tons, all of which are registered at the port of Baltimore and are licensed and enrolled as vessels of the United States under the laws thereof; that said vessels are regularly engaged in coastwise commerce on the Chesapeake Bay between the port of Baltimore, Md., as the port of origin and terminus of their voyage, and the port of Norfolk, Va.; that the port of Baltimore is on the Patapsco River, and the port of Norfolk on the Elizabeth River, both of said rivers being tributaries of the Chesapeake Bay; that the passenger and freight rates charged by the appellant are within the exclusive control and regulation of the Congress of the United States; that the appellant not only receives passengers and freight for transportation between the ports of Baltimore and Norfolk, but also receives freight for transportation beyond said ports by reason of through joint rates fixed and regulated by the Interstate Commerce Commission between the appellant and several railroads at the ports of Baltimore and Norfolk; that there are other corporations,

incorporated under the laws of this state, which own vessels of over 500 dead-weight tons, registered at the port of Baltimore, and regularly engaged in commerce between the port of Baltimore and the port of Norfolk and ports on the Atlantic Coast, such as the Merchants' & Miners' Transportation Company; that the passenger and freight rates charged by said transportation company are likewise under the exclusive control of the Congress of the United States; that such rates between Baltimore and Norfolk are the same as those charged by the appellant; that the appellant, therefore, is in competition with said transportation company and any other corporation of this state owning vessels of over 500 dead-weight tons, registered at any port in this state and regularly engaged in commerce between the ports of Baltimore, Norfolk, and other ports beyond the Chesapeake Bay and tributaries; that by article 81, section 7, subsection 28, of the Code of Public General Laws of Maryland (Supplement 1929), it is provided that the following described vessels shall be exempt from taxation: "Vessels of over five hundred (500) dead-weight tons registered at any port in this State owned by American citizens or partnerships, or by any domestic corporation regularly engaged in foreign or coastwise commerce between any port in the State of Maryland and any port or ports beyond the limits of the Chesapeake Bay and its tributaries, provided that the exemption granted by this sub-section shall end December 31, 1935." That the vessels belonging to the appellant, namely, "President Warfield," "State of Maryland," and "State of Virginia," are each of over 500 dead-weight tons, registered at a port of Baltimore, Md., owned by the appellant, a domestic corporation, and regularly engaged in coastwise and wholly interstate commerce between the port of Baltimore and the port of Norfolk; that the appellant contends that so much of said section 7, subsection 28, as undertakes to limit and confine the benefits of the exemption therein contained to vessels regularly engaged in foreign or coastwise commerce "between any port in the State of Maryland and any port or ports beyond the limits of the Chesapeake Bay and its tributaries"

is an unlawful, unreasonable and unequal discrimination against the appellant's vessels, and is in conflict with article 15 of the Declaration of Rights of the State of Maryland, and section 8 of article 1 of the Constitution of the United States, and void and of no effect, and therefore, under the provisions of section 13 of chapter 226 of the Acts of 1929, the appellant's vessels are exempt from taxation in the same manner as if the aforesaid section 7, subsection 28, read as follows: "Vessels of over 500 dead-weight tons registered at any port in this State owned by American citizens or partnerships or by any domestic corporation regularly engaged in foreign or coastwise commerce."

In No. 14 it is further alleged that for the year 1929 the aggregate value and the taxable value of the shares of capital stock of the appellant was fixed by the State Tax Commission of Maryland in the manner provided for by law at $941,694, and in connection therewith the State Tax Commission valued the appellant's steamers President Warfield, State of Maryland, and State of Virginia, as of December 31st, 1928, at $323,000, $301,128.66, and $301,128.66, respectively, but in so fixing the aggregate value and the taxable value of the shares of capital stock the State Tax Commission did not exclude the aforesaid total valuation of appellant's vessels of $925,257.32; that demand has been made upon the appellant by the Mayor and City Council of Baltimore for payment of both Baltimore City and State of Maryland taxes, based and calculated upon the aforesaid assessments; that the taxes so demanded amount to $24,-836.26, of which $22,412.34 are Baltimore City taxes and $2,493.92 are State of Maryland taxes; that appellant was also notified that, unless the taxes were paid on or before July 31st, 1929, certain penalties would be charged, as well as interest on the amount of taxes, and further notified that the payments would be in arrears on July 1st, 1929, and that thereafter the appellant's property would be subject to seizure and sale in satisfaction of the taxes; that the appellant is ready and willing to pay to Baltimore City the taxes based and calculated upon an aggregate value and the taxable

value of its shares of capital stock of $16,437, which tax would amount to $433.51, said taxable value of $16,437 being the amount which would be taxable if the aforesaid value of the appellant's vessels were excluded from the assessment; that the statute providing for exemption of certain vessels discriminates against the appellant's vessels for no other reason than that they are not engaged in commerce with a port or ports beyond the limits of the Chesapeake Bay and its tributaries; and that such discrimination is arbitrary and unreasonable and in violation of the interstate commerce clause of the Constitution of the United States, in that a burden is placed upon its vessels to the exclusion of competitors and their vessels engaged likewise wholly in interstate commerce between this state and other states.

The prayers for relief are: First, that the statute creating the exemption be declared illegal and void in so far as said legislation attempts to tax the appellant for its vessels, while excluding others and their vessels engaged in like commerce; second, that the appellant and its vessels be decreed to be exempt from taxation in the same manner as other vessels of similar tonnage and regularly engaged in coastwise commerce between any port of this state as the port of origin and terminus and any other port or ports beyond the limits of the Chesapeake Bay and its tributaries; third, that in ascertaining or determining the aggregate value and taxable value of the shares of capital stock of the appellant, the value of the aforesaid vessel property owned by the appellant should have been excluded; and, in No. 14, a further prayer that the Mayor and City Council be restrained and enjoined from enforcing the payment of the aforesaid taxes to the extent of $24,402.72 thereof, and imposing any interest or penalty charges on the appellant for non-payment thereof.

The main question involved in both appeals is whether or not the value of the appellant's three vessels should be included in determining the assessment of its capital stock for taxation purposes. The procedure employed by the appellant to raise this question is different in the two cases, which necessitates a separate consideration of each. In No. 14 it

is an original proceeding in a court of equity by a bill to enjoin the Mayor and City Council of Baltimore from collecting the tax for the year 1929, and this case is governed by the law as it stood after the passage of chapter 264 of the Acts of 1924, which was codified in the Code of 1924 as sections 2 and 9 of article 81 thereof. Section 2 provides: "Except as provided in Section 9 of this Article all interests, shares or proportions owned by residents of this State in ships or other vessels whether such ships or other vessels be in or out of port, are and shall be valued and assessed for the purposes of State, county and municipal taxation to the respective owners thereof in the county or city in the State in which said owner or owners shall respectively reside and such respective owners shall pay the taxes thereon." Section 9, which is codified under the subhead "Exemptions," provides: "All vessels of over five hundred (500) dead weight tons registered at any port in this State and owned by an American citizen, partnership or association, or by any corporation incorporated under the laws of the State of Maryland, regularly engaged in foreign or coastwise commerce, between any port in the State of Maryland as the port of origin and terminus of their respective voyages and any other port or ports beyond the limits of the Chesapeake Bay and its tributaries, are exempted from all taxation in this State for State or local purposes; and, in ascertaining or determining the aggregate value and the taxable value of shares of the capital stock of any corporation incorporated under the laws of this State, in the manner provided in Section 166 of this Article, the value of such vessel property owned by any such corporation shall be excluded, anything in said Section 166 to the contrary notwithstanding, until and including December 31st, 1925."

The State Tax Commission valued each share of stock of the appellant for taxation purposes at $2,237.06. This assessment was arrived at in accordance with the provisions of section 166 of article 81, and no exemptions were allowed. The appellant did not appeal from the assessment as made by the State Tax Commission, and took no action in respect to

said assessment until it filed its bill in this case in Circuit Court No. 2 on July 3rd, 1929. Section 253 of article 81 provides: "There shall be an appeal to court on questions of law only from decisions of the State Tax Commission to the court in that county where the property is situated, if real estate or tangible personal property, or where the owner resides, if intangible personal property." Section 259 provides: "Appeals from any action of the State Tax Commission to court, as authorized by Section 253 hereof, shall be taken within thirty days of such action by petition setting forth the question or questions of law which it is desired by the appellant to review, and notice thereof shall be given by summons or subpoena, duly served on all parties directly in interest, by the Sheriff of the county or city in which said appeal is filed, and shall be heard and decided by the court, sitting without a jury. All appeals to court in Baltimore City shall be to the Baltimore City Court, and there shall be a further right of appeal to the Court of Appeals from any decision of the Baltimore City Court or of the circuit courts of the several counties. Such appeals must be taken within ten days of the final judgment or determination of the lower court. The power to assess shall in all cases include the power to classify for taxation, and the power to review an assessment on appeal shall in all cases include also the power to review any question of classification for taxation."

By the decision of this court in the case of *Schluderberg v. Baltimore,* 151 Md. 603, 135 A. 412, 414, it was determined that a corporation, desiring to have a judicial review of the action of the State Tax Commission in assessing its property for the purpose of taxation, must follow the method prescribed by the statute, namely, to take an appeal from such action within thirty days to the Baltimore City Court, if in Baltimore City, or if in the counties to the circuit courts of the respective counties, and with the further right of appeal to this court. In the *Schluderberg* case, as here, no appeal was taken from the assessment as made by the State Tax Commission. The question of exemption of certain of its property by reason of it being a manufacturing

concern was first sought to be raised as a defense to a suit brought for the collection of the tax. The court there said: "If the protest is based upon an alleged erroneous finding of fact by the commission, the review is limited to that body; if, however, the correctness of the assessment depends upon a question of law, the statute provides for an appeal from the decision of the State Tax Commission to the Baltimore City Court or the circuit courts for the counties, as the case may be, dependent upon the situs of the property involved, and a further appeal from the decision of those courts to the Court of Appeals. The appellant here did not protest the assessment of this personal property, after having been notified by the State Tax Commission of its being made; neither did it appeal from that body to the Baltimore City Court within thirty days, the time prescribed by the statute. It did nothing from the time it received notice of the assessment, with the warning to protest within ten days or else same would be final, until suit was instituted for the collection of the taxes. It now comes in, by way of defense to that suit, and for the first time alleges that the property assessed was exempt under the provisions of the Acts of 1918, ch. 82. * * * The State Tax Commission having jurisdiction in the matter and being the tribunal authorized by law to pass upon this question of fact, if the appellant was not contented with the assessment made, and of which it had notice, it was incumbent upon it to protest the assessment before the commission within the time prescribed in the notice, and introduce before the commission such evidence as it could to show that the property in question was used entirely or chiefly in connection with manufacturing. We are of the opinion that, upon its failure to do this, the appellant is now precluded from making this defense in a collateral proceeding brought against it for the collection of the tax. * * * It may be argued that the classification of the personal property of the appellant into two classes, the one exempt and the other taxable, involves a question of law. It is conceivable that in some cases this might be true; but that question is of no consequence in this case, because, even if there be a question of law

involved, thereby permitting an appeal from the action of the State Tax Commission within the time prescribed by the statute, there was no protest or appeal of any kind made, taken, or prayed by the appellant."

Following that decision, it must be now taken as settled that, if the appellant desired to question the validity of the assessment of its capital stock as made by the State Tax Commission, upon the ground that the commission misconstrued the law in respect to the exemption provided for certain designated vessel property, it should have, within the time prescribed by the statute, taken an appeal to the Baltimore City Court; and failing in that, the assessment as determined by the State Tax Commission for the year 1929 is final and binding upon the appellant. It follows that the appellant is bound to pay the tax for that year, based upon the final assessment as made by the State Tax Commission, and has no standing to enjoin the collection of the tax in a court of equity. The chancellor's action in dismissing the bill in No. 14 must therefore be affirmed.

In No. 15, questioning the legality of the assessment of the appellant's stock for the tax year 1930, the appellant has followed the procedure laid down by the statute, and that case is properly before us on appeal from Circuit Court No. 2 of Baltimore City, which tribunal was substituted for the Baltimore City Court, in appeals from the State Tax Commission, by chapter 226 of the Acts of 1929. The appellant's three vessels were included by the State Tax Commission in making up the assessment of its stock for taxation. The appellant contends that this is erroneous, claiming an exemption under certain provisions of chapter 226, which sections are now codified as section 6, sub-section 9, and section 7, sub-section 28, of article 81. Under the heading, "What Shall Be Taxed and Where," sub-section 9 of section 6 provides: "All interest, shares or proportion owned by residents of this State in all ships or other vessels, whether such ships or other vessels be in or out of port, in the county and/or city in which the owners respectively reside." Section 7 provides: "The following shall be exempt from assessment and

from state, county and city taxation in this State, each and all of which exemptions shall be strictly construed." Among the property designated as being exempt, as set forth in sub-section 28 of section 7, are: "Vessels of over five hundred (500) dead weight tons registered at any port in this State owned by American citizens or partnerships or by any domestic corporation regularly engaged in foreign or coastwise commerce between any port in the State of Maryland and any port or ports beyond the limits of the Chesapeake Bay and its tributaries, provided that the exemption granted by this sub-section shall end December 31, 1935."

By chapter 226 of the Acts of 1929, the Legislature repealed article 81 of the Code of 1924, entitled "Revenue and Taxes," and enacted a new article with the same title, thereby recodifying and revising the revenue and tax laws of the State. By section 13 of the Act of 1929, now printed as a footnote to section 1 of article 81 (Supplement 1929), it was provided: "That if any section of this act or any provision of any section of this act, or the application thereof to any person or circumstances, or section of the Code of Public General Laws enacted or re-enacted or amended by this act, or any provision of any such section or the application thereof to any person or circumstances, is held invalid, the remainder of the act and of said section of the act or of said section of the Code of Public General Laws and the application thereof to other persons or circumstances shall not be affected thereby; and if any exemption or exception from any tax is held invalid, the tax shall apply without such exemption or exception."

The exemption from taxation granted by sub-section 28 of section 7, in clear and unambiguous language, is applicable to: First, vessels of over 500 dead-weight tons registered at any port in this state; second, owned by American citizens or partnerships or by any domestic corporation; third, engaged in any foreign or coastwise commerce between any port in the State of Maryland and any port or ports beyond the limits of the Chesapeake Bay and its trbiutaries. By the allegations of the bill the appellant claims that its three ves-

sels sought to be exempted are over 500 dead-weight tons, that the owner is a domestic corporation regularly engaged in coast-wise commerce between the port of Baltimore, a port in the State of Maryland, and Norfolk, a port outside of the State of Maryland, in the State of Virginia. It further alleges that Norfolk is on the Elizabeth River, and that Baltimore is on the Patapsco River, both of which are tributaries of the Chesapeake Bay. By this allegation the appellant admits that its vessels are outside of the letter of the exempting statute, because that statute only exempts vessels regularly engaged in coastwise trade between a port of the State of Maryland and a port or ports beyond the limits of the Chesapeake Bay and its tributaries. The port of Norfolk being situated on the Elizabeth River, a tributary of the Chesapeake Bay, is not a port beyond the Chesapeake Bay and its tributaries. From 1841 to 1924 such vessels or interests therein were assessed and taxed as personal property when owned by a citizen of Maryland or a domestic corporation. Shortly after the passage of the Act of 1841, its validity was attacked on the ground that it was a tax upon navigation, in contravention of the commerce clause of the Federal Constitution. In passing upon that question our predecessors, in *Howell v. State,* 3 Gill, 14, held that an interest in ships and vessels is private property, and, belonging to a citizen of Maryland living within her territory, subject to her jurisdiction and protected by her laws, is a part of his capital in trade, and, like other property, the subject of state taxation; and, further, that there was no incompatibility between the law taxing the interest in a vessel and a license authorizing it to carry on the coasting trade, the tax not interfering with the right to navigate. The decision in the *Howell* case has been approved by later decisions of this court (*Gunther v. Mayor, etc., of Baltimore,* 55 Md. 459), and numerous decisions of the Supreme Court of the United States, among which are the *State Tonnage Tax Cases,* 12 Wall, 213, 20 L. Ed. 370, and *Wheeling, P. & C. Transportation Co. v. Wheeling,* 99 U. S. 284, 25 L. Ed. 412. In the *State Tonnage Tax Cases* it was held that taxes can-

not be imposed by a state upon ships "at so much per ton of registered tonnage"; but the distinction is made and preserved in all of the cases between taxes levied by a state on ships as instruments of commerce, which are prohibited, and taxes on ships as property, which are allowed.

The taxes levied upon the vessels of the appellant, under the provisions of chapter 264 of the Acts of 1924 and chapter 226 of the Acts of 1929, are taxes on the vessels as property and not as instruments of commerce. The return made by the appellant to the State Tax Commission lists them as property of the value therein set forth, and from this return the assessment was fixed. The tax was just as certainly a property tax, after the legislation of 1924 and 1929, as it had been from 1841 to 1924, during all of which time, in conformity with the authority of the *Howell* case and decisions of the Supreme Court, the appellant without question has paid the tax based upon such assessments. It seems clear that this is a property tax, and not a tax on an instrument of commerce, for the reason that, had the appellant seen fit to discontinue the use of one or all of the vessels during the year 1930 and not engage in commerce at all, it would still have been liable to the tax. The contention of the appellant seems to be that, although the assessment and tax was valid so long as its competitors were required to pay a like tax, the granting of an exemption to one or more of such competitors, without extending such exemption to it, transformed the tax, which theretofore had been a property tax, to a tonnage tax, or a tax upon an instrument of commerce.

The appellant's prayers for relief in No. 15 are, first, that the exemption clause be declared void, and, failing in that, that its vessel property be, by construction, included in the exempted class. We do not deem it necessary to discuss the question of the invalidity of the exemption clause on the ground that the classification of exemption is unreasonable, because the relief sought in these proceedngs, selected by the appellant, is that it be relieved of paying the tax complained of; and if the exemption be stricken down, it would in no way relieve the appellant from the payment of

the tax imposed. We do not desire to be understood as saying that the classification of those vessels exempted from taxation is unreasonable and void, but simply that, if it should be so determined, it could avail the appellant nothing in these proceedings, so far as relief from payment of the tax is concerned.

Upon a full consideration of the contentions of the appellant, it would seem that its real complaint is that it is now taxed, while competitors are exempt, resulting in a pecuniary advantage to the competitors over it to the extent of the tax which it is required to pay. If this be true, its remedy lies, not in attempting to be relieved of the tax itself, but in restraining the proper taxing officials from allowing the exemption to its competitors. Every taxpayer has a financial interest in seeing that all property in the state, properly the subject of taxation, should be taxed, because, by increasing the taxable basis, the rate necessary for the production of the expenses of the state and local governments will be reduced, and the individual's tax correspondingly lowered. Such a proceeding was approved by this court in *Schley v. Lee,* 106 Md. 390, 67 A. 252. Entertaining the views herein expressed, the order appealed from in No. 15 must be affirmed.

> *Order appealed from in No. 14 affirmed, with costs to the appellee.*

> *Order appealed from in No. 15 affirmed, with costs to the appellee.*