RICHARD L. BORDEN ᴇᴛ ᴀʟ. *v.* DIRECTOR,
STATE DEPARTMENT OF ASSESSMENTS
AND TAXATION ᴇᴛ ᴀʟ.

[No. 338, September Term, 1973.]

*Decided October 9, 1973.*

The cause was argued before THOMPSON, POWERS and MENCHINE, JJ.

*Stephen H. Sachs* and *Elizabeth Logan Nilson*, with whom were *Frank, Bernstein, Conaway & Goldman* on the brief, for appellants.

*K. Donald Proctor, Assistant Attorney General,* and *Roger D. Redden,* with whom were *Francis B. Burch, Attorney General, Z. H. Stafford, John M. Court, Edward O. Clarke, Jr.* and *Wm. G. Richlin* on the brief, for appellees.

MENCHINE, J., delivered the opinion of the Court.

Some of the appellants [1] had filed a bill of complaint "on their own behalf and on behalf of all those similarly situated" seeking declaratory and injunctive relief from taxes imposed after allegedly unlawful assessments in Anne Arundel and Talbot Counties in 1971. An amended bill of complaint filed by the same and other [2] appellants sought

---

[1]. Richard L. Borden and Robert E. Barba, owners of residential waterfront property in Anne Arundel County joined in the bill in their own behalf and on behalf of all owners of residential waterfront properties in Anne Arundel County with respect to the 1971 assessment;

William E. Ford and Charles A. Merson, owners of residential non-waterfront property in Anne Arundel County, joined in the bill in their own behalf and on behalf of all owners of residential non-waterfront property in Anne Arundel County with respect to the 1971 reassessment;

Lee F. Tabler, owner of residential waterfront property, and Ethel F. Hunt, owner of residential non-waterfront property in Talbot County, joined in the bill in their own behalf and on behalf of all owners of residential property in Talbot County with respect to the 1971 assessment.

[2]. Edna M. Welch and J. F. Kendrick, owners of residential waterfront property in Anne Arundel County, joined in the bill in their own behalf and

additional relief as to taxes imposed after an allegedly unlawful assessment in Anne Arundel County in 1972. The amended bill alleged that state and county officials, departments and governments[3] failed to carry out the mandate imposed by Article 81, § 232 (8)(a) and (b); Article 81, § 14 (b)(1), and Article 81, § 232 (4)[4] of the Annotated

on behalf of all owners of residential waterfront property in Anne Arundel County with respect to the 1972 assessment;

Edward F. Sizer and Dallas W. Bauman, owners of residential non-waterfront property in Anne Arundel County, join in the bill in their own behalf and in behalf of all owners of residential non-waterfront property in Anne Arundel County with respect to the 1972 assessment.

3. Named as defendants in the amended bill of complaint were: Albert W. Ward, Director of the State Department of Assessments and Taxation; William H. Riley, Supervisor of Assessments of the State Department of Assessments and Taxation; Linton B. Pumphrey, Supervisor of Assessments for Anne Arundel County; James S. McDaniel, Supervisor of Assessments for Talbot County; The State Department of Assessments and Taxation; Donald P. Carter, Controller, Anne Arundel County; Anne Arundel County, Maryland; The County Council of Anne Arundel County; Herman F. Mielke, Treasurer, Talbot County; The County Commissioners of Talbot County; Louis L. Goldstein, Comptroller of the Treasury.

4. "Article 81, § 232 (8) *Continuing methods of assessment and review and reassessment.* — (a) To maintain and enforce a continuing method of assessment review, so that all assessable real property in every county and Baltimore City shall be reviewed at least once each year. Property shall be reviewed, in the discretion of the Director of the Department, by the use of property description cards, property location maps, land classification maps, unit value maps, land use maps, zoning maps, records of new construction, sales records, building cost data, private appraisals or periodic surveys of assessment ratios or by the use of any other materials or information considered by the Director or the Department to be reliable aids in determining property value. In conducting this review, it shall not be necessary that properties be reviewed individually and separately; for the purpose of conducting this review, properties may be grouped into areas, grouped according to character or use, or grouped in any other manner which the Director or the Department considers to be necessary or helpful to the efficient conduct of said review. The Director and the Department shall have the power, at any time, to order and enforce a review of any properties, if such properties have not been reviewed within one year; and it shall be the duty of the Director to order and enforce a review of any properties upon receipt of a request to do so from the final assessing authority for the county or city in which such properties are located.

(b) To maintain and enforce a continuing method of real property reassessment, so that all assessable real property in every county and Baltimore City shall be properly reassessed annually whenever the annual review required in subparagraph (a) hereof discloses a change in value. In addition, the Director and the Department shall have the power, at any time, after consultation with the county commissioners in the several counties, or the appeal tax court where such exists, or the board of municipal and zoning appeals in Baltimore City as the case may be, to order and enforce a reassessment of any properties, if it appears, after a consideration and evaluation of the results of the annual assessment review

Code of Maryland requiring them to conduct an annual review and, where appropriate, annually to reassess all residential properties in Anne Arundel and Talbot Counties. The bill alleged that the appellant taxpayers and other taxpayers similarly situated (being about one-third of the taxpayers in each of the two years) were forced to bear a greater tax burden in the ensuing fiscal year than was the burden of other taxpayers upon the tax rolls of the two counties. The bill alleged that those 1971 and 1972 reassessments, violative of the aforementioned statutes, also were in violation of Article 15 of the Maryland Declaration of Rights and of Section 1 of the Fourteenth Amendment to the Federal Constitution.[5] The bill further alleged that the appellees will continue to engage in the same improper and unlawful assessment practices in the future. The relief sought was as follows:

A. *Declaratory Relief*

(1) That appellees' assessment procedures contravene

---

required by subparagraph (a) hereof, that the existing assessments upon such properties are erroneous because they are significantly greater or less than the assessments on other similar properties possessing comparable values."

Article 81, § 14 (b)(1) "All real property directed in this article to be assessed, shall be assessed at the full cash value thereof on the date of finality. The term full cash value as used in this subsection shall mean current value less an allowance for inflation, if in fact inflation exists."

Article 81, § 232 (4) *"Supervision of assessments.* — To supervise the assessment of all property in the counties and cities of this State to the end that all taxable property shall be entered upon the assessment rolls and equalized between persons, firms and corporations, so that all persons, firms and corporations shall be assessed alike for like kind of property."

**5.** Article 15. Maryland Declaration of Rights

"That * * * the General Assembly shall, by uniform rules, provide for the separate assessment, classification and sub-classification of land, improvements on land and personal property, as it may deem proper; and all taxes thereafter provided to be levied by the State for the support of the general State Government, and by the Counties and by the City of Baltimore for their respective purposes, shall be uniform within each class or sub-class of land, improvements on land and personal property which the respective taxing powers may have directed to be subjected to the tax levy; * * *"

Fourteenth Amendment, Section 1, Federal Constitution

"* * * No State shall make or enforce any law which shall abridge the privileges or immunities of citizens of the United States; nor shall any State deprive any person of life, liberty, or property, without due process of law; nor deny to any person within its jurisdiction the equal protection of the laws."

Article 81, § 232 (a) and (b); do not conform to the requirements of Article 81, § 14; do not conform to Article 81, § 232 (4); and are in violation of Article 15 of the Declaration of Rights and Section 1 of the Fourteenth Amendment of the Constitution of the United States.

(2) That the tax levies resulting from the 1971 reassessment be declared void and illegal, or, alternatively, that any increase in tax levies resulting therefrom be declared void and illegal.

(3) That the 1972 reassessment in Anne Arundel County be declared void and illegal.

B. *Injunctive Relief*

(1) Forbidding valuation and assessment of residential properties in the counties on any other basis than upon an annual review and reassessment as required by Article 81, § 232 (8)(a) and (b).

(2) Requiring execution of a continuing method of assessments to assure that all real property in Anne Arundel and Talbot Counties is reviewed once a year and reassessed annually, if such review discloses a change in value.

(3) Requiring formulation, pursuant to Article 81, § 244, of a uniform plan for the assessment of property meeting the requirement of Article 81, § 232 (8)(a) and (b).

(4) Forbidding the collection of any property tax based on the 1971 assessment and requiring refund of any money paid by appellants or members of their respective classes, or, in the alternative, forbidding the collection of any taxes based on any increase resulting from the 1971 reassessment and requiring refund of such increase that those appellants and members of their respective classes may have paid following the 1971 reassessment.

(5) Forbidding the Supervisors of Assessments for Anne Arundel and Talbot Counties from placing the 1971 and 1972 reassessments on the tax rolls of Anne Arundel and Talbot Counties respectively.

(6) Forbidding the Supervisors of Assessments of Anne

Arundel and Talbot Counties to certify the tax rolls to the County Council and the County Commissioners of Anne Arundel and Talbot Counties respectively.

(7) Forbidding the Controller of Anne Arundel County and Herman F. Mielke, Treasurer of Talbot County, as collectors of taxes, to prepare and issue tax bills for fiscal 1973-74, based upon the 1971 and 1972 assessments, or, in the alternative, forbidding them to prepare and issue tax bills to appellants and members of their respective classes for fiscal 1973-74 as to any increase resulting from the 1971 and 1972 reassessments.

The appellees Ward, Riley, Pumphrey, McDaniel and the State Department of Assessments and Taxation (allegedly responsible for the procedures utilized in the 1971 and 1972 reassessments) moved for partial summary judgment. The appellees Carter, Anne Arundel County, County Council of Anne Arundel County, Mielke, County Commissioners of Talbot County, and Goldstein (occupying roles in the collection of taxes but not in the reassessment procedures) moved for complete summary judgment. The motions for summary judgment were granted by the trial court.

The granting of the requested summary judgment denied to the appellants and to the classes they purport to represent the right to:

(a) a refund of taxes paid or to any part thereof;

(b) injunctive relief against the collection of taxes based upon the 1971 and 1972 assessments;

(c) injunctive relief against the consequences of the reassessments of 1971 and 1972;

(d) injunctive relief forbidding preparation and issuance of tax bills based on the reassessments of 1971 and 1972;

(e) injunctive relief forbidding preparation and issuance of tax bills reflecting increased tax liability because of the reassessments of 1971 and 1972.

The grant of summary judgment left for further decision

by the trial court the determination, upon the merits of the case, whether the assessment practices in Anne Arundel and Talbot Counties in 1971 and 1972 were in conformity with applicable substantive law. Although the decision appealed from determined less than all claims, the trial judge directed entry of a final judgment with an express determination that there was no just reason for delay, as authorized by Rule 605 a. The appeal, therefore, was properly taken,[6] subject to the single caveat that the reserved issue is not before us. In the posture of the case on this appeal, we assume, without deciding, that the assessment practices were not in conformity with law.[7]

### Appellants' Claims to Refund of Taxes

*Rapley v. Montgomery County,* 261 Md. 98, 274 A. 2d 124, is wholly dispositive of this claim to relief. In *Rapley* it was said at page 110 [130]:

> "* * * the common law rule, as interpreted by our prior decisions, * * * precludes the recovery of taxes paid voluntarily under a mistake of law, even if paid under protest and even if the statute under which the tax was paid is later determined to be unconstitutional or invalid. The only possible escape from this harsh rule is found in the case where the taxing statute itself provides a refund; * * *." [8]

### Appellants' Claims for Injunctive Relief

As heretofore stated, the appellants' claim to injunctive relief sought restraint of collection of taxes; relief from the

---

6. Cf. *Brooks v. Ford Motor Credit Co.,* 261 Md. 278, 274 A. 2d 345. Appeal from denial of injunction is authorized by Article 5, § 7 (c).

7. At argument, this Court was informed that the trial judge had ruled favorably to the appellants upon the reserved issue and had ordered the remaining appellees "to fully discharge their obligations under § 232 (8)(b), Article 81" and had required them to submit "within 30 days a detailed description of how they propose" to do so. This appeal will, of course, in no way relate to that aspect of the case.

8. Article 81, § 213 and § 214 provide a statutory method for the refund of State and county taxes erroneously or mistakenly paid.

consequences of reassessments; and restraint upon preparation and issuance of tax bills reflecting any, or any increased, tax liability. In our view all such claims will stand or fall together.

Appellants rely heavily upon *Hillsborough Township v. Cromwell,* 326 U.S. 620, wherein it was said at page 623:

> "The equal protection clause of the Fourteenth Amendment protects the individual from state action which selects him out for discriminatory treatment by subjecting him to taxes not imposed on others of the same class. The right is the right to equal treatment. He may not complain if equality is achieved by increasing the same taxes of other members of the class to the level of his own. The constitutional requirement, however, is not satisfied if a State does not itself remove the discrimination, but imposes on him against whom the discrimination has been directed the burden of seeking an upward revision of the taxes of other members of the class."

That case must be considered in the light of its extraordinary conditions. The Supreme Court there points out (p. 629) that federal injunctive relief to the taxpayer was accorded because:

> "* * * *so much uncertainty surrounds* the New Jersey remedy to protect the taxpayer's federal right that a refusal to dismiss the bill was a proper exercise of discretion. Thus however the case may be viewed, *the exceptional circumstances which we have noted take it out of the* general rule of Great Lakes Dredge & Dock Co. v. Huffman, 319 U. S. 293." [Italics supplied]

Although the opinion in *Hillsborough* is not a model of clarity in the exposition of its facts, it is fair to conclude that the words "exceptional circumstances which we have noted" contained in the quotation immediately above made

reference to the circumstances outlined in footnote 1 of the opinion, *i.e.:*

> "The *assessments call for tax payments of nearly $7,000,000 for each year as compared with the Township's budget of something like $97,000* annually. *Prior* to these *assessments* the net assessed valuation for taxation of all property assessed, both real and personal, in the township *amounted to $3,117,863* for 1940 and *$3,139,020* for 1941. \* \* \* *The additional assessments* against respondent *apparently would have increased the valuation* of the township tax ratables *by $221,940,438* for each of the two years, \* \* \*."
> [Italics supplied]

It is plain that the absence of State remedy coupled with proof of a purposeful discrimination of the rights of the taxpayer compelled the grant of the relief in *Hillsborough,* supra. It is equally plain that (a) no uncertainty surrounds a Maryland remedy available to the named appellants, and (b) there is no showing of a purposeful discrimination against them.

There is no contention here [9] that assessments imposed upon the individual appellants exceeded full cash value (as authorized and required by the provisions of Article 81, § 14 (b)(1). Moreover, the amended bill of complaint, (seeking relief also for the new and different one-third of the taxpayers of Anne Arundel County affected by the 1972 reassessment) necessarily implies that *all* taxpayers, including those reassessed in a prior or the ensuing year, would be entitled to the same relief. Carried to its logical end, this burgeoning effect would achieve the absurd result that *no taxpayer would be assessed in accordance with law.*

Such a result would bring chaos to the State and its political subdivisions. Balanced against the tax anarchy that would follow the grant of the relief here sought is the

---

**9.** Some of the appellants had sought relief through assessment appeal procedures authorized by Article 81, § 255; some had not.

circumstance that *every taxpayer* (over a three year period) would have been subjected substantially to the same tax burden, (even though subjected to an added burden in the particular year of reassessment) because of benefits accruing from the absence of reassessment in the other two years.

We do not imply of course that this circumstance would operate to permit the appellees to fail or to refuse to perform a duty prescribed by law. It is plain to us, however, that the form of injunctive relief sought by the appellants in this appellate aspect of the subject litigation is not available to them.

The case of *Baltimore Steam Packet Co. v. State Tax Commission*, 161 Md. 9, 155 A. 158, compels rejection of the relief here sought. In that case the Court of Appeals said at page 22 [163]:

> "Upon a full consideration of the contentions of the appellant, it would seem that its real complaint is that it is now taxed, while competitors are exempt, resulting in a pecuniary advantage to the competitors over it to the extent of the tax which it is required to pay. If this be true, its remedy lies, not in attempting to be relieved of the tax itself, but in restraining the proper taxing officials from allowing the exemption of its competitors. Every taxpayer has a financial interest in seeing that all property in the state, properly the subject of taxation, should be taxed, because, by increasing the taxable basis, the rate necessary for the production of the expenses of the state and local governments will be reduced, and the individual's tax correspondingly lowered. Such a proceeding was approved by this court in *Schley v. Lee*, 106 Md. 390, 67 A. 252."

To the same effect is *State Tax Commission v. C & P Telephone Co.*, 193 Md. 222, 66 A. 2d 477, wherein the Court said at page 235 [482]:

> "* * * if other utilities have been underassessed,

> appellee's remedy lies not in attempting to be relieved of the assessment itself but in restraining the Commission from not properly assessing other utilities."

The two cases last above cited make crystal clear that there is an appropriate remedy available to the appellants.

The case of *Sears, Roebuck v. State Tax Commission*, 214 Md. 550, 136 A. 2d 567, cited by appellants, is distinguishable upon three grounds. First, the taxpayer there utilized the statutory relief provided by § 13 (a) of Article 81 of the Annotated Code (1951). Secondly, the Court of Appeals in *Sears*, itself pointed out at page 559 [572]: "* * * the appellant is not contending that any other assessment made under the direction of the Commission was too low. It is complaining that its assessment is too high. The discrimination here has been intentional and arbitrary." Thirdly, although *Sears, supra,* cited *Hillsborough, supra,* and recognized its ruling "that the State itself must remove ·such discrimination," it also cited and did not depart from the doctrine declared in *Schley v. Lee*, 106 Md. 390, 67 A. 252, upon which the controlling cases of *Baltimore Steam Packet* and *Commission v. C & P*, both *supra*, were bottomed.

Other Maryland cases cited by appellants factually are so disparate as to furnish no meaningful comparison,[10] or did not reach the issue we find controlling in this case.[11] Out of state cases cited by appellants also have been considered, but we have found them distinguishable on their facts, or in conflict with principles declared in the decisions upon which we have relied.[12]

---

10. *Allegany County v. Union Mining*, 61 Md. 545.
  *Jones v. Gordy*, 169 Md. 173, 180 A. 272.
  *Pressman v. Barnes*, 209 Md. 544, 121 A. 2d 816.
11. *Hooks v. Comptroller*, 265 Md. 380, 289 A. 2d 332.
12. Bettigole v. Springfield, 178 N.E.2d 10 [Mass.].
  Lougee v. New Mexico, 76 P. 2d 6.
  Miller v. Standard Nut Margarine Co., 284 U. S. 498.
  Morschauser v. American News Co., 178 N.Y.S.2d 279.
  Ogden City v. Armstrong, 168 U. S. 224.
  Oglesby v. Chandler, 288 P. 1034.
  Tumulty v. District of Columbia, 102 F. 2d 254 [U.S.C.A. D.C.].

Because we find that none of the individual appellants is entitled to the relief denied by the trial court, we do not reach the subsidiary issue whether their claim of entitlement to bring a class action for others similarly situated is a valid one.

> *Judgment affirmed.*
> *Costs to be paid by appellants.*
> *Mandate to issue forthwith.*

