CONSUMERS' ICE COMPANY OF BALTIMORE
CITY *vs.* THE STATE OF MARYLAND.

*Taxation—Unissued Shares of Stock Not Liable to Assessment—*
*Powers of State Tax Commissioner—Appeal Therefrom—Special*
*Tribunal.*

The unissued shares of the capital stock of a corporation are not liable
to assessment for taxation by the State Tax Commissioner, under
Code, Art. 81, sec. 132 *et seq.*

The statute (Code, Art. 81, sec. 144) provides that a corporation may
appeal from the *valuation* of its shares of stock to the Comptroller
and Treasurer, sitting as a board of review. *Held,* that even if any-
thing more than the *valuation* of the shares could be reviewed on
such appeal, yet if the Tax Commissioner exceeds his authority by
assessing for taxation unissued shares of stock, the corporation may,
without having appealed to the Comptroller and Treasurer, resist
the collection of the tax thereon in the Courts.

The action of a tribunal with limited statutory powers, from which no
appeal is given, is conclusive only when such action does not exceed
the jurisdiction conferred by the statute.

Appeal from the Court of Common Pleas. This was an
action by the State of Maryland to recover the State tax
assessed against the defendant, the Consumers' Ice Company,
for the year 1893, amounting to $186.37. The Court below
(HARLAN, C. J.) ruled that upon the evidence the plaintiff
was entitled to recover. The case is stated in the opinion
of the Court.

The cause was argued before ROBINSON, C. J., BRYAN,
MCSHERRY, FOWLER, BRISCOE, ROBERTS and BOYD, JJ.

· *Edgar H. Gans* and *Vernon Cook,* for the appellant.

Two questions are raised by the testimony for the de-
fendant: *First.*—Can the State Tax Commissioner value and
assess unissued shares of the capital stock of a corporation ?
*Second.*—If not, is the statutory remedy of appeal to the

Comptroller of the Treasury and the State Treasurer, exclusive of all other remedies, or may such an assessment be disregarded and attacked collaterally and its collection resisted in a proceeding to enforce the payment of the tax?

As to the first question it is presumed there will be but little discussion. The State could hardly presume to tax that which does not exist. Unissued stock is, as a matter of fact, not stock at all. It is a mere power in the directors to receive subscription for stock. *Sturges* v. *Stetson*, 1 Biss. (U. S.) 246–8 ; *1 Thomp. Corp.* sec. 1061. The authority and duty of the State Tax Commissioner in this regard is regulated by the Code. *Code P. G. L.*, Art. 81, sec. 141. He is to determine the taxable value of the "shares of stock" of the corporation. Such language, by all the authorities, can refer only to shares of stock actually issued, and not to the shares merely authorized by the charter to be issued. *Pratt* v. *Munson*, 17 Hun. (N. Y.) 475 ; *Appeal of Lehigh Ave. R. Co. (Pa.)*, 18 Atlantic Reporter, 498.

The answer to the first question leads up to the true answer to the second. It may be true as a general rule that where the assessor or assessors have jurisdiction, both of the person and of the property assessed, their acts partake of a judicial character, and though subject to appeal or review in the manner provided by statute, cannot be attacked collaterally, yet where they transcend their authority or where their action is wrong in principle, or based upon an erroneous application of the law or unauthorized rule of valuation, it cannot be upheld, and the tax and all proceedings thereunder are invalid. *Cooley on Taxation*, page 750 ; 25 *Am. and Eng. Enc. Law*, 237 ; *McLean* v. *Jephson*, 123 N. Y. 142 ; *In re N. Y. Catholic Protectory*, 77 N. Y. 342 ; *National Bank* v. *City of Elmira*, 53 N. Y. 49 ; *Goff* v. *Supervisors of Ontagamie County*, 43 Wis. 55–8 ; *Hersey* v. *Barron County*, 37 Wis. 75 ; *Babcock* v. *Town of Granville*, 44 Vt. 325 ; *Wade* v. *Comm'rs of Craven Co.*, 74 N. C. 82.

The general principle which applies to an assessor or board of assessors is the same as that applied to all limited

tribunals ; where acting within the scope of their authority, their decisions must be appealed to the tribunal appointed by law for that purpose, but when they go beyond their lawful authority their acts amount to nothing, and do not create the necessity for appeal.    *M. & C. C. of Baltimore* v. *Porter*, 18 Md. 301 ; *Williamson* v. *Berry*, 8 How. 543. In the Maryland case just cited this rule was applied to the City Commissioner in a case of a question as to an assessment for grading a street, and even the Mayor and City Council of a municipal corporation are subject to the same limitation.    *Holland* v. *M. & C. C. of Baltimore*, 11 Md. 186 ; *M. & C. C. of Baltimore* v. *Grand Lodge I. O. O. F.*, 44 Md. 445.

The closest analogy is found in the case of the exercise of the power of eminent domain by a municipal corporation. The Mayor and City Council may open and close streets when in their judgment the public convenience requires it, and they are the sole judges as to when this public convenience so requires the taking of private property, but private property may be taken only for a public use.    This public use is the essential prerequisite for every exercise of this power, and the question " what is a public use ?" is a question for the Courts of law.    *Van Witzen* v. *Gutman*, 79 Md. 406.

*Robert Ludlow Preston* (with whom was *J. Alexander Preston* and *Alexander Preston* on the brief), for the appellee.

Section 144 of Art. 81 provides that the assessment and valuation of the State Tax Commissioner shall be final where no appeal is taken, yet the appellant in this case does neither more nor less than ask the Court to change the assessment placed upon its shares of stock by the State Tax Commissioner, in a manner and proceeding not only not provided by law, but practically prohibited, in that a special remedy is provided in the Code for the correction of all erroneous valuations and assessments of shares of stock of corporations, *i. e.*, by appeal to the Comptroller and Treas-

urer, sitting as a Board of Review.   The power of the State Tax Commissioner to value and assess shares of capital stock has been vested in him by the Legislature, and it is difficult to understand how his decision can be changed in any manner, except by an appeal, as provided in section 144 of Art. 81 of the Code.   *State of Maryland* v. *Stirling,* 20 Md. 516–7 ; *County Commissioners of Allegany County* v. *Union Mining Co.,* 61 Md. 548.   The appellant neglected to follow the remedy prescribed by statute, and it is now too late for it to set up the defence stated.   *Mayor and City Council of Baltimore* v. *Canton Company,* 63 Md. 237.

The appellant's contention is a remarkable one, in that, if sustained, any corporation of this State liable to taxation on its shares of capital stock, could come into Court at any time and escape payment of taxes duly assessed and levied, notwithstanding that the said assessment had become final under the provisions of the Code.   These taxes upon the shares of stock of the appellant company were assessed and levied in 1893, and were payable in November of the same year, and suit was not instituted until January 9, 1894, and it certainly would not be just to the State that defendant should be allowed now to set up the defence stated.   If this should be the law, it would be impossible for the State of Maryland to have any basis on which it would be possible to estimate the amount required for carrying on the government.   The revenue would always be liable to be uncertain and vacillating in amount.   It is a well settled principle that where special jurisdiction is conferred by statute upon a tribunal, there can be no appeal except as provided by law. *Jackson* v. *Bennett,* 80 Md. 77 ; *Smith* v. *Goldsborough,* 80 Md. 63.

BOYD, J., delivered the opinion of the Court.

The appellee sued the appellant for State taxes levied and assessed on the latter's capital stock.   The tax was laid on four thousand shares of stock assessed at twenty-five dollars per share.   At the trial the defendant proved that there

were only 3277 shares of stock issued and that the State
Tax Commissioner was informed that there were 723 shares
unissued.    On motion of the plaintiff the Court below
struck out this evidence, which had been admitted subject
to exception, and granted a prayer that the plaintiff was en-
titled to recover the amount of taxes set forth in the bill of
particulars, with five per centum additional thereon and in-
terest.    From this action of the Court this appeal was taken.

We are therefore called on to decide whether the State
Tax Commissioner can lawfully assess *unissued stock* of a
corporation.    If he can, that will end the controversy, but
if we reach the contrary conclusion we must then determine
whether the defendant can set up that defence in a proceed-
ing of this character.

Section 132 of Art. 81 of the Code of Public General
Laws requires the Tax Commissioner to assess for State pur-
poses on or before the 15th day of May in each year " the
shares of capital stock in all the banks, State or National,
banking associations or other incorporated institutions or
companies, incorporated under the authority of this State,
or located or doing business therein, whose shares of capital
stock are liable to assessment and taxation by the laws of
this State," and he has broad powers given him to enable
him to obtain information concerning the same.

Section 138 of that Article requires the president or other
proper officer of banks or other incorporated institutions, to
furnish annually, on or before the 1st day of March, to the
County Commissioners of each county, and the Appeal Tax
Court of Baltimore City, in which any of its stockholders
may reside, a list of the said stockholders, together with the
number of shares held by each, and also to make out and
deliver to the County Commissioners of the county, or Ap-
peal Tax Court, where said corporation is situate, an ac-
count of the number of shares of stock in such corporation
held by persons not residents of this State, and provides
that the same shall be valued at its actual cash value to and
n the names of such stockholders respectively.    That sec-

tion further requires the corporation to pay the tax levied on the stock held by non-residents.

Section 141 provides for the assessment of the real estate of corporations, by the County Commissioners and the Appeal Tax Court of Baltimore City, and for the payment by the company of State, county or city taxes thereon, in the same manner as the same are levied upon and paid by individual owners of real property. It then prescribes the method of ascertaining the value of the shares of stock of corporations by the Tax Commissioner, who is to deduct the assessed value of the real property belonging to the company from the aggregate value of all the shares of such company, and divide the residuum by the number of shares of capital stock, "and the quotient shall be the taxable value of such respective shares for State purposes." The Tax Commissioner is then required to certify to the County Commissioners of each county where any of the stockholders reside, and to the Appeal Tax Court of Baltimore City, if any reside there, the assessed taxable value of such respective shares of stock so ascertained; and the taxable value of such shares of stock owned by residents of this State and taxable within this State shall, for county and municipal purposes, be valued to the owners thereof in the counties or city in which they respectively reside, but the taxes so assessed are to be paid by the company and charged to the respective stockholders.

Section 131 determines where the stock shall be deemed to be situate for the purpose of valuing stock held by non-residents.

Taking all these sections together, it would seem to be perfectly clear that the Tax Commissioner is not authorized to assess *unissued shares* of stock, and any other construction might very materially affect the taxable value of stock for the purposes of county or municipal taxation. Take for example a corporation of an authorized capital of one hundred thousand dollars—one thousand shares of the par value of $100 each. Suppose five hundred shares are subscribed

for and paid up, thus giving the company fifty thousand dollars, with part of which it purchases real estate of the value of and assessed at twenty thousand dollars. The Tax Commissioner would then, under section 141, deduct the assessed value of the real estate ($20,000) from the aggregate value of all the shares of stock ($50,000, assuming that to be the aggregate value), and would have a residuum of $30,000. Then, if the State's contention be correct, he should divide this residuum by the whole number of shares authorized (1,000), and the quotient would be the taxable value of such respective shares, namely, $30 per share. The Tax Commissioner would then certify to the County Commissioners of each county where any stockholder resides (and to the Appeal Tax Court of Baltimore City, if any reside there), " the assessed taxable value of such respective shares of stock or shares so ascertained as aforesaid." A stockholder holding one hundred shares, for which he had paid and which were actually worth $10,000, would thus pay (through the company) taxes on only three thousand dollars (in addition to his interest in the real estate), whilst if the Tax Commissioner divided the $30,000 by five hundred (the number of shares issued) the assessment on his shares would be six thousand dollars. The county in which such stockholder resided would thus be deprived of the taxes on the difference. When the statute directs the Tax Commissioner to " assess for State purposes the shares of capital stock in all incorporated institutions or companies," etc., it evidently means shares of stock that are in existence. If they have no existence, they have no value. Those that are already issued may possibly have some additional value given them by reason of the fact that others can be issued, but that can be taken into consideration when the former are assessed. The State can lose nothing by this construction. If the capital stock as fixed by the charter be not subscribed and paid for as required by law, and the State suffer thereby, the corporation may possiby subject itself to proceedings for dissolution, but under existing statutes it is

not required to pay taxes on unissued shares of stock, and the Tax Commissioner had no authority to assess the 723 shares of this company which had not been issued.

But by section 144 of Art. 81, the State Tax Commissioner is required as soon as he has valued and assessed the shares of stock in the corporations in this State, to certify and return the said valuation to the Comptroller of the Treasury, who must at once notify the president, cashier or other proper officer of such corporations of the said valuation and assessment of their shares.   If no appeal be taken within thirty days, "the said valuation and assessment shall be final," but if an appeal is taken within that time to the Comptroller and Treasurer, they are required to consider the same, "and if the Comptroller and Treasurer shall both be of the opinion that such valuation and assessment so made by the State Tax Commissioner is erroneous, and ought to be changed, they shall change the same accordingly, and the valuation and assessment so agreed upon by the Comptroller and Treasurer shall be final; but if either the Comptroller or Treasurer shall agree with the State Tax Commissioner as to the correctness of the valuation so made by him, then such appeal shall be dismissed, and the original valuation shall be and remain as the true valuation of such shares."

It is therefore contended by the State, that as the assessment and valuation by the Tax Commissioner are made final unless changed on appeal to the Comptroller and Treasurer, they cannot be attacked collaterally, and as no appeal was taken in this case to those officers the appellant is without remedy.   We might perhaps rest our decision on the language of the statute itself, as it seems to contemplate a review by the Comptroller and Treasurer of the *valuation* alone.   It says such corporation may "appeal from such *valuation*."   It is true it does authorize the Comptroller and Treasurer to change the *"valuation* and *assessment,"* if they think they ought to be changed, but it further provides that "if either the Comptroller or Treasurer shall agree with

the State Tax Commissioner *as to the correctness of the valuation* so made by him, then such appeal shall be dismissed, and *the original valuation* shall be and *remain as the true valuation* of such shares." It might therefore well be questioned whether the Comptroller and Treasurer have any power to review anything but the *valuation* of the stock. But the statute could not have intended that if the assessment was based on an erroneous application of the law by one or more of these three officers of the State, who are not necessarily lawyers, the taxpayer is without remedy in some tribunal organized for the purpose of determining questions of law. If it were simply a question of the *valuation* of stock *liable to assessment and taxation* by the Tax Commissioner, and he and the appellate board had jurisdiction over the subject-matter and the parties, their decision would be final and conclusive. But as we have already said, the Tax Commissioner had no power or authority to assess *unissued stock*, and that being so, his assessment of that stock was a nullity, just as much so as would have been his assessment of the real estate of this company or of the shares of stock of some foreign corporation over which he had no control. His assessment of stock, which he had no authority to assess could have no more effect than if assessed by the County Commissioners of a county where the company had real estate. This is not a question as to whether the Tax Commissioner, in valuing the stock, took into consideration items of value that were improper, and hence, the assessment was irregular, but he had no right or power to value or assess these 723 shares of stock at all. If he had assessed the 3,277 shares at so much per share, so as to amount to one hundred thousand dollars, it would have been different, but he assessed four thousand shares at $25 per share. It could with as much propriety be argued that he could have assessed *five* thousand shares at $25 per share, and that in a suit to recover the tax, the defendant could not have defended as to the tax on the 1,000 shares by proving that its authorized capital was only

*four* thousand shares. If the Tax Commissioner had been misled by the conduct of the defendant's officers, such as the refusal or neglect to furnish the information required by the statute, a different question might be presented, but such is not shown to be the case—on the contrary, the testimony that was excluded showed that he was informed that the 723 shares were unissued.

The duties of the Tax Commissioner are well defined and they are limited to the powers granted to him by statute. He is authorized " to assess for State purposes the shares of capital stock on all banks, State or National, banking associations, or other incorporated institutions or companies incorporated under the authority of this State," etc., and from the valuation so to be made by him, an appeal is allowed, as already stated, to the Comptroller and Treasurer, but as he has no authority to assess unissued stock the Comptroller and Treasurer have no authority to review his assessment of it and their action on such an appeal to them would have been nugatory and of no avail.

This case is clearly distinguishable from those cited on behalf of the State, such as *Jackson* v. *Bennett*, 80 Md. 77 ; *Smith* v. *Goldsborough*, 80 Md. 63 ; *County Commissioners* v. *Union Mining Co.*, 61 Md. 545 ; *Mayor, etc., of Baltimore* v. *Canton Co.*, 63 Md. 237, and others referred to. So long as tribunals, with special and limited statutory powers, act within the scope of such powers their action is ordinarily conclusive and final unless appeal be given specially to some other tribunal, but they must not exceed the jurisdiction conferred on them, as we hold the Tax Commissioner did in undertaking to assess this unissued stock.

It follows from what we have said that the testimony of the defendant was relevant and material and the prayer of the plaintiff ought not to have been granted. The judgment must therefore be reversed.

*Judgment reversed and new trial awarded,*
*with costs to the appellant.*