AEJIS COMPANY *v.* STATE TAX COMMISSION.
[No. 91, October Term, 1928.]

*Decided February 21st, 1929.*

The cause was argued before BOND, C. J., PATTISON, URNER, ADKINS, OFFUTT, PARKE, and SLOAN, JJ.

*Arthur W. Machen, Jr.,* and *Charles C. Wallace,* for the appellant.

*Simon E. Soboloff, Deputy City Solicitor of Baltimore,* with whom were *Thomas H. Robinson, Attorney General, Herbert Levy, Assistant Attorney General,* and *A. Walter Kraus, City Solicitor,* on the brief, for the appellees.

PATTISON, J., delivered the opinion of the Court.

The appellant, the Aejis Company, is the owner of an apartment house in Baltimore City, known as the Carolina Apartments, situated on University Parkway, at the corner of Fortieth Street.

On the 13th day of April, 1928, the appellant filed its petition in the Baltimore City Court against the State Tax Commission of Maryland, in which it alleged that the Appeal Tax Court of Baltimore City assessed said property, as of October 1st, 1927, for the levy of state and municipal taxes for the year 1928, in the sum of $225,000; that it, within thirty days, appealed from the assessment to the State Tax Commission of Maryland pursuant to the Public General and Local Laws applicable to such appeal, which appeal the State Tax Commission dismissed on the ground that the petitioner "had not complied with sections 167 and 170 of article 4 of the Public Local Laws of Maryland." The petition further alleged that the action of the commission in dismissing the appeal was illegal, as it deprived the petitioner "of valuable rights in that the assessment, as it now stands, is far in excess of the true value of the property." The petition then prayed the court to pass an order commanding the commission to transmit said proceedings to it, not later than the day named therein. When the proceedings reached the court, a motion made by the commission to dismiss the appeal was granted and the appeal was dismissed.

The apartment house was, in the year 1926, assessed by the Appeal Tax Court of Baltimore City in the sum of $225,000. This valuation formed the basis of taxation for the year 1927; and inasmuch as no application was made before September 1st of that year, by the owner of the property, to the Appeal Tax Court, for a reduction in the valuation of the property for taxable purposes, and the court of its own volition had made no change therein, the same, as claimed by the appellees, stood as the basis of taxation for the year 1928.

Section 167 of the Charter of Baltimore City, mentioned in appellant's petition as section 167 of article 4 of the Public Local Laws of Maryland, provides: "If real estate or other property shall, from any cause, have increased or decreased in value since the last assessment, the said court shall correct and alter the assessment of the same, so as to conform to its present value, provided that any party desiring to apply to the Appeal Tax Court for a revaluation of any real or personal property, shall make such application before the first day of September, in order to be acted on so as to take effect for the ensuing year. The Appeal Tax Court shall not receive or act upon any such application made after the first day of September in any year, so as to affect the assessment for the ensuing year." And section 170 of the Charter provides: "Any person or persons, or corporation, assessed for real or personal property in the City of Baltimore and claiming to be aggrieved because of any assessment, or classification made by the said court, or because of its failure to reduce or abate, modify, change or alter any existing assessment or classification may, by petition, appeal to the State Tax Commission to review the assessment or classification. * * * All such appeals shall be taken within thirty days after an assessment or classification, has been made as aforesaid, or within thirty days after the refusal to reduce or abate, modify, alter or change an existing assessment." And section 171 of the Charter provides: "The valuation of the property subject to taxation in the City of Baltimore, as it shall appear upon the assessment books of said court

on the first day of October in each and every year, shall be
final and conclusive, and constitute the basis upon which
taxes for the next ensuing fiscal year shall be assessed and
levied. * * * The said court shall on the first day of October,
or as soon thereafter as practicable, in each year, make out
and deliver to the city collector a statement showing the valu-
ation and assessment of all the property subject to taxation
in said city, as it shall appear upon the assessment books of
said court on said first day of October. * * * The said state-
ment shall be known as the taxable basis for the next ensuing
fiscal year, and after the levy of taxes it shall be designated
as the tax roll for said year. Further, the said Appeal Tax
Court shall submit to the Board of Estimates on the first day
of October, or as soon thereafter as practicable, a statement
of the total valuation of the respective classes of property as
shown on the annual roll submitted by the Appeal Tax
Court of Baltimore to the city collector. The said court shall
perform such other duties as may be prescribed by law or
ordinances not inconsistent with this Charter."

Section 167 of the Charter, as amended by the Act of
1914, ch. 532, requires all applications for reduction of valu-
ations, to be effective for the ensuing year, to be made on or
before the first day of September, and the Appeal Tax Court
was thereby prohibited from receiving or acting upon any
application made after that time. The language used clearly
shows that it was the intention of the Legislature that this
provision of the Charter was to be mandatory; and, by sec-
tion 170, any person or corporation claiming to be ag-
grieved because of any assessment made by said Appeal Tax
Court, or because of its failure to reduce any existing as-
sessment, was given the right by petition to appeal to the
State Tax Commission to review the assessment, and, by
section 171, the Appeal Tax Court was, on or before the first
day of October, or as soon as practicable thereafter, to make
out and deliver to the collector of taxes a statement showing
the valuation and assessment of all the property as it ap-
peared on the assessment book of said court on said first day
of October.

The amendment of section 167 of the charter, made by the Act of 1914, ch. 532, requiring all applications for the reduction in the amount of valuation or assessments to be made on or before the first day of September, was made in order that all valuations or assessments should, as far as practicable, be ascertained and fixed before the first day of October, so as to enable the Appeal Tax Court, as required by section 171, to make and deliver the statement therein mentioned to the collector of taxes, and also to submit to the Board of Estimates, on or before the last named date, or as soon thereafter as practicable, the statement of the total valuation of property as shown on the annual roll submitted by the Appeal Tax Court to the city collector.

As said in the opinion of the learned judge who sat in the court below: "In a large municipality like Baltimore City, the basis of assessment must be definitely known at a time beyond which the municipal authorities can be assured no change can occur without notice to those charged with the supervision and establishment of the tax rate, and an opportunity be afforded the city authorities to consider and determine the matter. It is to make this period certain that the proviso naming September 1st was added to Section 167, in the year 1914." It is essential that the valuation should be ascertained as of a certain time, and the time fixed and established by the Charter is October 1st of each year. It is then, or as soon thereafter as practicable, that the tax roll is to be made out and delivered to the collector and to the Board of Estimates. To be ready to make delivery of the tax roll at such time, it was necessary that the valuations and assessments should at that time have been definitely determined. If applications for reduction could be made so late as October 1st, followed by hearings thereon, the above mentioned provisions of the statute could not be complied with, and for that reason, no doubt, all applications were required to be made one month prior to the first day of October, or on or before the first day of September, allowing time for hearing and decision upon the application. It is true that the value of the property is made as of October 1st,

when the determination of its value is made at an earlier date, but this, we think, is neither unreasonable nor unconstitutional, as claimed by the appellant, when we consider the necessity therefor, in order that the city government may properly function in the collection of its taxes, and in the performance of other duties imposed upon it.

In this case no application for a reduction of the assessed value of the property as it then appeared upon the books of assessment has been made by the owner of the property to the Appeal Tax Court, either before or after the first day of September, 1927, and, unless we ignore the provision of section 167 of the City Charter, there was no right of appeal to the State Tax Commission, nor from it to the Baltimore City Court.

It is not claimed by the appellant that it, at any time, applied to the Appeal Tax Court for a reduction of the assessed value of its property, but it rests its right to an appeal from that court to the State Tax Commission upon the ground that there is a revaluation or reassessment of *all* property of the city in each and every year, including the year 1928, even in those cases where no affirmative action is had by the Appeal Tax Court in relation to the assessment. In support of this contention it relies, it seems, upon expressions found in sections 170 and 171 of the Charter.

In section 170 it is said: "Any person or persons, or corporation, assessed for real or personal property in the City of Baltimore and claiming to be aggrieved because of any assessment made by the said court, or because of its *failure* to reduce, abate, modify, change or alter any existing assessment or classification may, by petition appeal to the State Tax Commission to review the assessment. * * * All such appeals shall be taken within thirty days after an assessment or classification has been made, as aforesaid, or within thirty days after the refusal to reduce, abate, modify, alter or change any existing assessment." To ascertain what is meant by this provision of the Charter, we must consider in connection therewith the language of section 167 of the Charter, above quoted, relating to the reduction of assess-

ments and how they are to be made, and, when so considered, it will appear that "the failure" to reduce an existing assessment, giving the owner the right to appeal to the State Tax Commission, as stated in section 170, means the failure to reduce, *after application made by the owner* to the Appeal Tax Court *asking that the same be reduced.*

The provision in section 171, which the appellant claims supports his position that a revaluation of *all* property is made in each and every year, is the requirement that the Appeal Tax Court shall in each and every year render the statement therein mentioned, called the tax roll, to both the tax collector and the Board of Estimates, on or before October 1st, in every year. The statement or tax roll mentioned, as stated by the Charter, is one showing the valuation and assessment "of all the property subject to taxation, in said city, as it shall appear upon the assessment books of said court on said first day of October." It is difficult to gather from this requirement any intention of the Legislature to require a revaluation of all the property in the City of Baltimore in each and every year, or that the fulfillment of such requirement amounts to a revaluation of the property in each and every year.

The appellant likewise refers to section 162, of article 81 of the Code of Public General Laws, as supporting the claim so made by him. We need not discuss the effect of this section of the Public General Laws upon the proposition made by the appellant, for whatever effect this statute may at one time have had thereon, the same has been modified by the more recent local statute.

As we find no error committed by the learned court below in dismissing the appeal, its order dismissing it will be affirmed.

*Order affirmed, with costs to the appellees.*