# MAYOR AND CITY COUNCIL OF BALTIMORE *v.* HOME CREDIT COMPANY.

[No. 22, April Term, 1933.]

58

*Decided May 26th, 1933.*

The cause was argued before PATTISON, URNER, ADKINS, DIGGES, PARKE, and SLOAN, JJ.

*Lawrence B. Fenneman* and *J. Francis Ireton, Assistant City Solicitors,* with whom were *R. E. Lee Marshall, City Solicitor* and *Hector J. Ciotti, Assistant City Solicitor,* on the brief, for the appellant.

*Francis Key Murray,* with whom was *Thomas J. Tingley,* on the brief, for the appellee.

PATTISON, J., delivered the opinion of the Court.

This appeal is from a judgment recovered by the appellee, the Home Credit Company, against the Mayor and City Council of Baltimore, the appellant, for money alleged to have been erroneously and mistakenly paid to the appellant as taxes for the years 1930, 1931, and 1932. The case was tried by the court sitting without a jury. The verdict was for the plaintiff for the sum of $1,783.02, and a judgment for that amount was entered thereon in favor of the plaintiff. The appeal in this case was taken from that judgment. In the trial of the case three exceptions were taken to the rulings of the court upon the evidence and one upon its rulings on the prayers. The plaintiff offered two prayers, both of which were granted; and the defendant offered seven, all of which were refused except his last or seventh prayer.

As shown by agreed statement of facts appearing in the record, "the Home Credit Company * * * is a corporation duly incorporated under the laws of the State of Delaware, with its principal office and place of business in the City of Baltimore, State of Maryland, where it is engaged in the purchasing and discounting of promissory notes and transacting a general finance business.

"On August 19th, 1927, the Home Credit Company * * * filed with the Appeal Tax Court of the Mayor and City Council of Baltimore its 'Schedule and Return to the Appeal Tax Court of Tangible and Intangible Personal Property Located in the City of Baltimore Owned by Foreign Finance Corporations.' * * * The printed form of said 'Schedule and Return' was prepared by the Mayor and City Council of Baltimore * * * but was completed and filled in by the Home Credit Company. * * * Upon this return the Appeal Tax Court valued the property returned therein and made an assessment for purposes of taxation for 1928 and subsequent years against the Home Credit Company * * * on September 20th, 1927, the assessment being * * * on intangible personal property of $42,890.00, which assessment was continued from year to year thereafter. This intangible personal property assessment of $42,890.00 was computed only from the value stated by the Home Credit Company in the 'Schedule and Return,' under the caption of 'Notes on Loans.' Notice of said assessment was duly given and no protest filed thereto, and taxes for the years 1928 and 1929 were paid thereon by the Home Credit Company. * * * On the * * * intangible personal property assessment of $42,890.00 taxes were levied for the year 1930 by the Mayor and City Council of Baltimore for State and City purposes by virtue of Ordinance Nos. 876 and 875, respectively. * * *

"The Home Credit Company * * * paid taxes so assessed and levied for the year 1930 * * * amounting to $191.72, of which amount * * * $127.38 was paid * * * for City taxes, and * * * $64.34 was paid * * * for State taxes" and "turned over to the Treasurer of the State of Maryland. * * *

"On August 25th, 1930, the Home Credit Company * * * filed with the Appeal Tax Court * * * another 'Schedule and Return to the Appeal Tax Court of Tangible and Intangible Personal Property Located in the City of Baltimore Owned by Foreign Finance Corporations,' this Schedule and Return superseding its Schedule and Return filed on August 19th, 1927. * * * The printed form of said 'Schedule and Return' (like the first) was prepared by the Mayor and City Council of Baltimore * * * but was completed and filled in by the Home Credit Company. * * * Upon this return the Appeal Tax Court valued the property returned therein and made an assessment for purposes of taxation for the year 1931 and subsequent years against the Home Credit Company * * * on October 4th, 1930, the assessment being * * * on intangible personal property of $1,102,754.17. Notice of said assessment was duly given, upon receipt of which * * * the Home Credit Company * * * protested said assessment. No hearing was had upon the protest, but by agreement with * * * the Home Credit Company * * * the Appeal Tax Court reduced said assessment * * * to $275,940.00 on October 21st, 1930. This * * * assessment of $275,940.00 was computed only from the value stated by the Home Credit Company in the 'Schedule and Return,' under the caption of 'Loans on Notes.' Notice of this assessment * * * $275,940.00 on intangible personal property, was duly given and no protest filed thereto. On the * * * intangible personal property assessment of $275,940.00 taxes were levied for the year 1931 by the Mayor and City Council of Baltimore for State and City purposes by virtue of Ordinances Nos. 1211 and 1213, respectively. * * *

"The Home Credit Company * * * paid taxes so assessed and levied for the year 1931 * * * amounting to $1,241.74, of which amount * * * on August 31st, 1931, the sum of $699.15 was paid * * * for City taxes and * * * $349.58 * * * for State taxes" and "turned over to the Treasurer of the State of Maryland * * * of which amount * * * the sum of $128.67 was paid * * * for City taxes, and * * *

$64.34 * * * for State taxes" and "turned over to the Treasurer of the State of Maryland. * * *

"The assessment * * * on intangible personal property of $275,940.00, made by the Appeal Tax Court of the Mayor and City Council of Baltimore on October 21st, 1930, was continued for the year 1932. On the * * * assessment of $275,940.00 taxes were levied for the year 1932 by the Mayor and City Council of Baltimore for State and City purposes by virtue of Ordinance Nos. 94 and 90, respectively. * * *

"The Home Credit Company * * * paid taxes so assessed and levied for the year 1932 on August 30th, 1932 * * * amounting to $1,241.73, of which amount * * * $827.82 was paid * * * for City taxes, and * * * $413.91 * * * for State taxes," and "turned over to the Treasurer of the State of Maryland. * * *

"Therefore, the Home Credit Company * * * has paid to the Mayor and City Council of Baltimore the following sums of money for taxes assessed on intangible personal property as aforesaid:

| For the Year | State Taxes | City Taxes |
|---|---|---|
| 1930 | $ 64.34 | $ 127.38 |
| 1931 | $413.92 | $ 827.82 |
| 1932 | $413.91 | $ 827.82 |
| Total | $892.17 | $1,783.02 |

"and has demanded from the Mayor and City Council of Baltimore * * * the return of said money paid as aforesaid as a refund of taxes under and by virtue of chapter 226 of the Acts of 1929 of the General Assembly of Maryland, codified in the 1929 Supplement to the Maryland Code, article 81, Section 153."

The two schedules and returns mentioned in the agreed statement of facts were filed in evidence. These schedules are inquisitorial in their nature. In them are inserted different kinds of property; for example, under the head of intangible property they have "Mortgages on Real Prop-

erty," "Chattel Mortgages," "Notes on Loans," "Securities (Shares of Stocks and Bonds)." Following each of these items is a blank space in which the taxpayer is expected to write his answer thereto, stating if he has any such property and, if so, the amount or extent of it.

In addition to the facts contained in the stipulation above set out and the contents of the schedule and return, the record contains the further evidence as to the character of the "Notes on Loans," and the reasons why the tax thereon was paid without protest or appeal. The president, treasurer, and assistant treasurer of the appellee company each swore that these notes were made by individuals and not by corporations, and that the company held no bonds or certificates of indebtedness of any kind of any corporation. The president, Joseph T. Polk, testified further that the company did not protest against the payment of taxes on these notes, as it was thought by its officials, at the time of the payment of the taxes, and for a long time thereafter, that notes signed by individuals were under the law subject to assessment and taxation.

The three exceptions to the testimony were taken to the court's ruling in admitting the evidence of these witnesses.

The court, sitting as a jury, was told by the plaintiff's first prayer, which was granted, that should it find from the evidence "that the plaintiff paid to the defendant monies as an intangible property tax, for the years 1930, 1931 and 1932, and that said tax was based on an assessment of notes, then if the court * * * shall further find that all of said notes were in fact signed or issued by individuals, and shall further find that said monies were paid under a belief by the plaintiff that the same were legally due and owing, the verdict of the court, sitting as a jury, must be for the plaintiff." The plaintiff's second prayer, a damage prayer, is consistent with the defendant's seventh prayer, and no objection is urged against it.

The defendant's first and second prayers asked for a directed verdict for the defendant, the first upon the general

assertion that there was no evidence in the case legally sufficient to entitle the plaintiff to recover, and the second that under the evidence the plaintiff was not entitled to recover "by virtue of article 81, sec. 153 of the 1929 Supplement to the Annotated Code." By the defendant's third prayer the court, sitting as a jury, was told that should it find that the "taxes were levied upon assessments made by the Appeal Tax Court * * * from information given the said Appeal Tax Court by * * * the plaintiff, of which assessments the plaintiff was given notice," and the latter "failed to protest or appeal within the time prescribed and in the manner provided by law, and that such action or failure to act on the part of the plaintiff was a waiver of any right the plaintiff may have to maintain this suit, and, therefore, the verdict must be for the defendant." The defendant's fourth prayer required the court to find in somewhat greater detail the facts that were to be found in the third prayer, including the notice by the defendant to the plaintiff of the assessments made by the appeal tax court, and concluded by saying: "And the plaintiff failed to protest said assessments or appeal therefrom within the time prescribed and in the manner provided by law, then the verdict must be for the defendant." The defendant's fifth prayer was like the fourth, with the following words added thereto: "Even though the Court shall also find that the assessments made by the Appeal Tax Court of the Mayor and City Council of Baltimore aforementioned were so made by the said Appeal Tax Court upon notes on loans of individuals." The defendant's sixth prayer asked that the court rule that the "notes on loans referred to in the evidence in the case are certificates of indebtedness subject to valuation and assessment to the owner thereof."

These prayers present the following questions: (1) Were the notes mentioned, signed or issued by individuals, liable to assessment for the purpose of an intangible property tax pursuant to chapter 226, section 6, subsection 3, of the Acts of 1929, now codified in article 81, sec. 6, subsec. 3, of the 1929 Supplement to the Code? and (2) Was the failure of

the appellee to protest or appeal from the assessment after notice to it of the assessment, a waiver of any right the plaintiff may have to maintain this suit; or, if not a waiver, did its failure to protest or appeal within the time prescribed and in the manner provided by law defeat its right to recover the taxes paid on notes signed by individuals, if erroneously paid?

First. In subsection 3 of section 6 of article 81 of the Code, under the heading, "What Shall Be Taxed and Where," are included: "All interest-bearing bonds, certificates of indebtedness or evidences of debt, owned by residents of the State, in whatsoever form made or issued by any public or private domestic corporation (other than a county or city of this State), or made or issued by any State (other than this State), territory, district, possession or foreign country, or by any foreign public or private corporation, in the county and/or city in which the owners respectively reside." The language used in the statute appears to be plain and unambiguous, and the Legislature must be understood as having intended to mean what is plainly expressed in the statute. The Legislature by this statute was designating or naming the property that was subject to assessment and taxation, and it says "certificates of indebtedness or evidences of debt * * * in whatsoever form made or issued by any public or private domestic corporation." Certificates of indebtedness or evidences of debt made by individuals are certainly not included within the terms of this designation. Had the Legislature intended to include certificates of indebtedness or evidences of debt signed or issued by individuals, it would have said so, and would not in its designation have mentioned only certificates or evidences of debt signed or issued by corporations. *Healy v. State,* 115 Md. 377, 80 A. 1074; *Medley v. Williams,* 7 G. & J. 71; *Frazier v. Warfield,* 13 Md. 303; *Talbott v. Fidelity & Casualty Co.,* 74 Md. 544, 22 A. 395; *Leonard v. Wiseman,* 31 Md. 205; *Smith v. State,* 66 Md. 215, 7 A. 49; *Duvall v. Miller,* 94 Md. 711, 51 A. 570.

Second. In section 153, chapter 226, of the Acts of 1929,

now section 153 of article 81 of the Code, it is provided under the heading "Refund of Taxes" that: "Whenever any person shall have erroneously or mistakenly paid to the County Commissioners of any of the counties of this State, or to the collector or treasurer for such County Commissioners, or to the Mayor and City Council of Baltimore, or its collector, more money for taxes or other charges than was properly and legally chargeable to or collected (collectable) from such person, the said County Commissioners and the Mayor and City Council of Baltimore shall rectify the error and immediately levy and pay to such person any money that was so paid." The object and purpose of this statute was to enable a taxpayer to recover from the county commissioners in the counties and the Mayor and City Council of Baltimore, in the City of Baltimore, taxes erroneously and mistakenly paid, though paid under a mistake of law, when such recovery could not be had under the common law. *Helser v. State,* 128 Md. 228, 231, 97 A. 539; *Baltimore v. Lefferman,* 4 Gill, 425; *Morris v. Baltimore,* 5 Gill, 244; *Lester v. Baltimore,* 29 Md. 415; *George's Creek Coal & Iron Co. v. Allegany County Commrs.,* 59 Md. 255; *Baltimore v. Hussey,* 67 Md. 112, 9 A. 19; *Baltimore v. Harvey,* 118 Md. 275, 84 A. 487.

In construing the act of 1852, now codified as article 25, section 10, of the Code, which provided that the county commissioners "shall, when satisfied that any error has arisen by assessing property not liable to be assessed, rectify such error and levy and pay to the proper person any money that may have been paid in consequence of such error," this court, speaking through Judge Alvey, in *George's Creek Coal & Iron Co. v. Allegany County Commrs., supra,* said: "If, therefore, the statute has created and imposed a clear, positive duty, as we think it has (where the commissioners are satisfied of the error), such as would be required to support this application, to repay the taxes erroneously levied and received, that statute simply operates to change or modify the common

law rule that taxes paid under a mistake of law cannot be recovered back. That being so, whether the taxes be paid under a mistake of fact or a mistake of law, would make no difference; for in either case the party receiving the taxes would be bound to refund them; and there would be an implied promise raised to pay the amount so received, and upon that implied promise an action for money had and received could be maintained." What was said of that act is, we think, applicable to the act before us.

The appellant, however, contends that the right to recover for the taxes here alleged to have been erroneously paid is lost to the plaintiff because of the fact that when notified of the assessment it failed to protest and appeal therefrom. In support of this claim the appellant cites the following cases: *Schluderberg v. Baltimore,* 151 Md. 603, 135 A. 412,413; *Aejis v. State Tax Commission,* 156 Md. 590, 144 A. 842; *Baltimore Steam Packet Co. v. Baltimore,* 161 Md. 9, 155 A. 158; and cases in other jurisdictions. These cases, we think, are not applicable to the case under consideration. The decision in *Schluderberg v. Baltimore, supra,* was handed down prior to the passage of the Act of 1929, ch. 226, sec. 153, under which this suit is brought. In that case, whether the property was exempt from taxation or not depended upon a question of fact, which question of fact the state tax commission was legally empowered to determine. It was because of that fact that the case was differentiated from *Carroll County v. Shriver Co.,* 146 Md. 412, 126 A. 71, and *Consumers' Ice Co. v. State,* 82 Md. 132, 33 A. 427. In the *Schluderberg* case, the court, speaking through Judge Digges, said: "What has been said in respect to differentiating the *Shriver* case from the present case is equally applicable to *Consumers' Ice Co. v. State,* 82 Md. 132, 33 A. 427, the single question involved in that case being the question of law as to whether or not unissued stock was taxable at all." In the *Consumers' Ice Co.* case, the taxpayer was assessed with 4,000 shares of its stock, while a part of it had never been issued, and the court held, speaking through Chief Judge Boyd, that the unissued stock was not subject to assessment and taxation. In this case

it is also a question of law, the question being, Were notes made by individuals subject to assessment and taxation? Therefore, this case may be differentiated from the *Schluderberg* case for the reason assigned in distinguishing that case from those mentioned. The decisions in the *Aejis* case and the *Steam Packet Co.* case, it is true, were handed down after the passage of the act of 1929. But the facts of those cases are so different from the case before us that the law there enunciated can have no application to this case.

As we have already indicated, the answers contained in the schedule are to questions therein propounded. The object and purpose of submitting the schedule to the plaintiff was to learn from it what property it owned subject to assessment and taxation. It is fair to assume that the tax officials were better informed than the appellee as to what property was subject to assessment and taxation, and the inquiries propounded should have been directed only to such property.

There is nothing in the term "Notes on Loans" to indicate that the inquiry was directed only to notes signed by corporations. The plaintiff, as stated in the schedule, was subject to a penalty of $1,000 if it failed to render a full and particular account of personal property belonging to it or of personal property in its possession or under its care and management. The plaintiff answered truthfully, so far as the record discloses, stating the amount of notes that it had without regard to the character of them. It was only after paying the taxes thereon for several years that the plaintiff learned that the notes it had returned, all of which were made by individuals, were not taxable. It was then that the Mayor and City Council of Baltimore was called upon to refund to the appellee the tax so paid, and it was upon its refusal to do so that the appellee sought recovery under and by virtue of the Act of 1929, chapter 226.

The plaintiff could not protest and appeal until it knew of some fancied or real wrong inflicted upon it, and as it believed the notes were subject to assessment and taxation, there was nothing to protest against or to appeal from. When it learned that the notes were not subject to assessment, it

68

was too late to protest and appeal. The only remedy therefore left it was a suit under the act. If upon the facts of this case a recovery cannot be had under this act, it is hard to conceive upon what facts a recovery could be had thereunder.

For the reasons stated we find no error in the court's rulings upon the prayers. This leaves only the exceptions to the admission of evidence to be passed upon.

The appellant in its contention against the admissibility of the evidence to which the three exceptions were reserved invokes the rule prohibiting the introduction of parol evidence to contradict or vary a written instrument, which in this case is the schedule made out as and in the manner stated. The defendant has cited a number of cases supporting this general rule, among them *Cooley on the Law of Taxation*, vol. 3, sec. 1010, where the learned author states "Parol evidence is not admissible to vary or affect the written record of an assessment." In this case the evidence admitted under exceptions does not have the effect of varying or contradicting the schedule or assessment, as it is called. The appellant in the preparation of the schedule used the term "Loans on Notes" that it might be informed by the appellee as to the amount of notes that the plaintiff had belonging to it, and the inquiry is answered by giving to the appellant the amount of such notes. The evidence objected to in nowise varies or contradicts this amount. It merely states the character of the notes, by stating that they are notes signed by individuals. By the answer of the appellee they all may have been signed by corporations, or all signed by individuals, or part signed by individuals and part by corporations.

The question of the admissibility of the evidence excepted to is fully answered by Judge Boyd in *Consumers' Ice Co. v. State, supra*. In that case the defendant was assessed with 4,000 shares of its stock. The defendant offered evidence to show that only 723 shares of the stock had been issued. Upon objection being made thereto, this evidence was not admitted by the trial court, but upon appeal to this court Judge Boyd held that the evidence, of the same character and nature as

that of the evidence here excepted to, was relative and material, and should have been admitted.

As we find no error in the court's rulings either upon the evidence or prayers, the judgment will be affirmed.

*Judgment affirmed, with costs.*

---

On motion for reargument.

The motion for a reargument by the Mayor and City Council of Baltimore was not filed within thirty days after the opinion of the court had been delivered, and so is too late to be entertained under rule 43 of this court. *Winkel v. Geiger,* 154 Md. 673, 674, 141 A. 345. It may be well, however, to correct a misapprehension upon which the motion is apparently founded.

The remedies given the taxpayers by sections 182-188 of article 81 of the Code (Supp. 1929) before a statutory board, in order to contest the legality of the assessment by the methods there prescribed, and to recover the taxes paid, in the event, on appeal, they are ultimately adjudged to be illegal, are not exclusive, but cumulative. The taxpayers are not confined to the remedies conferred by these sections, but may adopt the new and alternative remedy created by section 153 of chapter 226 of the acts of 1929, now section 153 of article 81 of the Code. These remedies are alternative, and the taxpayer is therefore put to his election. So, not having proceeded under the other sections, the taxpayer here was at liberty to bring his suit in consequence of section 153, which provides a direct and simple method of relief, and a right of action in the event the money erroneously paid as taxes is not returned. *Cooley on Taxation* (4th Ed.), secs. 1278, 1618; *Detroit v. Wayne Circuit Judge,* 127 Mich. 604, 86 N. W. 1032; *Nat. Metal Edge Box Co. v. Readsboro,* 94 Vt. 405, 111 A. 386.

*Motion dismissed.*