## TIDEWATER OIL COMPANY ET AL. *v.* COUNTY COMMISSIONERS OF ANNE ARUNDEL COUNTY
[No. 65, January Term, 1935.]

*Decided April 11th, 1935.*

The cause was argued before BOND, C. J., URNER, PARKE, SLOAN, MITCHELL, SHEHAN, and JOHNSON, JJ.

*J. Crossan Cooper, Jr.,* and *Hunter H. Moss,* with whom were *Venable, Baetjer & Howard* on the brief, for the appellant.

*Emory H. Niles,* with whom were *Benjamin Michaelson* and *Niles, Barton, Morrow & Yost* on the brief, for the appellee.

*William L. Henderson, Assistant Attorney General,* with whom was *Herbert R. O'Conor, Attorney General,* on the brief, for the State Tax Commission.

URNER, J., delivered the opinion of the Court.

The Tidewater Oil Company and the Tidewater Oil Sales Corporation, on July 30th, 1930, filed with the

County Commissioners of Anne Arundel County, for tax assessment purposes, certain inventories of petroleum products belonging to those affiliated companies and stored in the county, which were therein "computed on a gallonage basis" to be worth $444,000. Upon the official assessment which adopted that valuation, and which continued without change in the absence of any requested modification, the companies paid in full and without objection the taxes levied for 1931, 1932, and 1933, the payments having been made by the Tidewater Oil Sales Company for the first and second, and by the Tidewater Oil Corporation for the last, of those years. In these consolidated actions they assert that, during 1931, 1932, and 1933, their petroleum products in Anne Arundel County had so far decreased in quantity and value that the taxes paid on the unchanged assessment greatly exceeded the amounts properly chargeable. The appeal is from judgments for the defendant on demurrers to the declarations, which claimed refunds of the tax payments to the extent of the alleged excess.

The assessment was made and continued in accordance with the following provisions of article 81 of Code Pub. Gen. Laws (Supp. 1929):

"11. Except as hereinafter provided, all property directed in this Article to be assessed, shall be assessed at the full cash value thereof on the date of finality. Any assessment existing on June 1, 1929, or thereafter made, shall continue in force from year to year until changed pursuant to the provisions of this Article.

"12. The stock in business of every person, firm, foreign corporation, or domestic ordinary business corporation, engaged in commercial business in this State shall be valued and assessed at its fair average value during the twelve months preceding the date of finality, or the portion of such period during which such stock in business was held."

The phrase "date of finality," as used in those sections, is defined by the Code to mean "the date as of which taxes are to be levied for the taxable year in question and upon

which assessments become final for such year, subject only to correction as herein authorized." Article 81, section 2(22). The county commissioners may correct assessments annually (article 81, section 39), but, when a taxpayer applies "for an allowance or deduction on account of the sale, transfer, alienation, loss or removal of any property," the commissioners "may interrogate him on oath in reference thereto and the disposal of the same," and as to "any acquisitions or investments made by him and not already assessed * * *" (article 81, section 40). A hearing may be demanded by the taxpayer before the county commissioners as to the alteration of his assessments "for the next ensuing year," and he may appeal from the action of the commissioners to the state tax commission, and from its decision, on a question of law, to the circuit court, and thence to the Court of Appeals. Article 81, sections 182-186.

No effort was made by the appellant corporations to utilize their available rights and remedies for the reduction of the assessment for the periods to which their suits relate. But they rely upon the Code provision that county commissioners "shall, when satisfied that any error has arisen by assessing property not liable to be assessed, rectify such error and levy and pay to the proper person any money that may have been paid in consequence of such error" (article 25, section 10), and also upon section 153 of article 81 of the Code Pub. Gen. Laws (Supp. 1929), which provides: "Whenever any person shall have erroneously or mistakenly paid to the County Commissioners of any of the counties of this State, or to the collector or treasurer for such County Commissioners, or to the Mayor and City Council of Baltimore, or its collector, more money for taxes or other charges than was properly and legally chargeable to or collected from such person, the said County Commissioners and the Mayor and City Council of Baltimore shall rectify the error and immediately levy and pay to such person any money that was so paid."

It is conceded in the declarations that the assessment made in 1930, upon the basis of the plaintiffs' own inventories, was correct, and therefore it could not be said to have involved any error in "assessing property not liable to be assessed" within the purview of section 10 of article 25 of the Code. Nor can the taxes levied upon the assessment, thus admittedly correct when made, and continued, as provided by statute, without question by the corporate taxpayers, be characterized as being more than were "properly and legally chargeable," within the meaning of section 153 of article 81. The mistake alleged by the plaintiffs had no relation to the existence, ownership, value , or taxability of the property to which the assessment of 1930 applied. Neither in fact nor in law is it claimed to have been erroneous. The error upon which the plaintiffs base the suits for a partial refund of their tax payments consisted simply of the omission to produce information in their own possession upon which a revision of the assessment might have been procured. In *George's Creek Coal & Iron Co. v. County Commissioners,* 59 Md. 255; *Baltimore v. Home Credit Co.,* 165 Md. 57, 166 A. 694, 167 A. 552, and *Baltimore v. Household Finance Co.,* 168 Md. 13, 176 A. 480, cited by the appellants, the disputed assessments purported to embrace property which was not legally taxable. The Code provision under which recovery of tax payments was claimed in those cases, and is sought in this suit, must not be so applied as to nullify the effect of the statutory regulations which are designed to insure a reasonable degree of certainty and finality in assessments for the purposes of taxation. This court has recognized the validity of such regulations. *Aejis Co. v. State Tax Commission,* 156 Md. 590, 592, 144 A. 842. While they must yield under appropriate conditions to the co-existing provisions for the benefit of a taxpayer whose assessment has been made under a mistake of law or fact, by which he is injuriously affected, they are enforceable as against a taxpayer's effort to prevent the collection, or to recover payments, of taxes levied upon an assessment which he concedes to have

been valid and correct when it was adopted, and which he subsequently fails to question by the direct method legally and readily available for its modification. In the following cases, in addition to the one last cited, taxpayers were denied a judicial review of assessments in regard to which there was other and adequate opportunity for objections: *Frederick County v. Clagett*, 31 Md. 210; *Allegany County v. Union Mining Co.*, 61 Md. 545; *Salisbury Perm. Bldg. & Loan Assn. v. Wicomico County*, 86 Md. 615, 616, 39 A. 425; *Moffat v. Calvert County*, 97 Md. 266, 54 A. 960; *Baltimore Steam Packet Co. v. Baltimore*, 161 Md. 9, 155 A. 158; *Schluderberg etc. Co. v. Baltimore*, 151 Md. 603, 135 A. 412.

Reference has been made by the appellants to section 150 of article 81 of the Code Pub. Gen. Laws (Supp. 1929), and its provisions are said to furnish support to the theory that tax payments have no finality which forecloses such questions as those raised by the present suits. By the section thus cited it is provided that, in actions to collect taxes, the certificate of the collector "showing the amount of tax due with all penalties and interest shall be *prima facie* evidence to entitle the plaintiff to judgment for the amount of such tax, penalty and interest and shall cast upon the defendant the burden of proving that the assessment was not legally made or that the tax has been paid or any other sufficient defense." That provision, as observed in the opinion delivered by the trial court, was intended to protect a taxpayer when sued by the tax collector, as "otherwise he might have to submit in silence to a judgment for taxes when he was not notified of the assessment; or when other provisions of law required as a condition precedent to a valid assessment had been ignored, and the assessment was void. *Gittings v. Baltimore*, 95 Md. 419, 52 A. 937, 54 A. 253; *Monticello Co. v. Baltimore*, 90 Md. 416, 45 A. 210; *Baltimore County v. Winand*, 77 Md. 522, 26 A. 1110; *Allegany County v. Mining Co.*, 76 Md. 549, 550, 25 A. 864. Here the original assessment was made upon the plaintiff's own figures, the property and the subject matter

were within the jurisdiction of the County Commissioners; undoubtedly it was valid." No support, therefore, is found in the last quoted Code provision for the right of recovery here asserted.

For the purposes of this decision, it is unnecessary to define the essential elements of assessment errors on account of which suits for the recovery of tax payments might be maintained. It has seemed to us sufficient to indicate only the reasons for our conclusion that the pending actions are not sustainable upon the ground of any alleged mistake of fact or of law contemplated by the statutes on which the plaintiffs rely.

*Judgments affirmed, with costs.*